Argued July 8, affirmed October 4, 1977

ANDRYSEK, *Respondent,*
*v.*
ANDRYSEK, *Appellant.*
(TC 76-3033, SC 25030)

569 P2d 615

Clay E. Johnson, of Bick & Monte, Eugene, argued the cause and submitted briefs for appellant.

Todd G. Brown, of McClain and Brown, Corvallis, argued the cause and submitted a brief for respondent.

Before Denecke, Chief Justice, and Holman,* Howell, Bryson, Lent, and Linde, Justices.

LENT, J.

*Holman, J. did not participate in the decision of this case.

**LENT, J.**

In June of 1976 plaintiff filed a petition for registration of a California judgment in her favor against defendant. ORS chapter 24. The trial court, upon the basis of the facts alleged in the petition, ordered that the judgment be registered.[1] Defendant then filed a "PETITION"[2] to set aside the registration, alleging affirmatively three separate bases for setting aside the registration. Plaintiff moved[3] for an order striking defendant's petition on the ground that it was "sham, frivolous and irrelevant." The motion was "granted." Defendant filed a notice of appeal "* * * from the order entered * * * to the extent that said order strikes [defendant's] petition * * *." We affirm.

■ Although plaintiff has not raised the question, we are required on the face of this record to determine initially whether we have jurisdiction of this matter. Our power to decide appeals is limited. Oregon Constitution, Article VII (original), Section 6, provides: "The Supreme Court shall have jurisdiction only to revise the final decisions of the circuit courts, * * *."[4]

We usually look to ORS 19.010 to determine what orders we may review on appeal. Defendant in his brief asserts our jurisdiction as arising under ORS 19.010(2)(a), which provides as follows:

"(2) For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"(a) An order affecting a substantial right, and

---

[1] The statutes do not provide for such an order. Indeed, the statutory scheme seems to assume registration as being a clerical act.

[2] ORS 24.080 provides that defenses "may be presented by appropriate pleadings." Whether such a "petition" is an appropriate pleading may be questioned, but the parties have not addressed the issue.

[3] It appears that if defendant's petition is to serve as the vehicle for raising defenses under ORS 24.080, the proper attack would be by general demurrer, but again these parties raise no issue in this respect.

[4] Under Oregon Constitution, Art VII (amended) § 2, the matter quoted from § 6 in the text is of statutory effect only.

which in effect determines the action or suit so as to prevent a judgment or decree therein."

We seriously doubt the applicability of that provision.

ORS 19.010 further provides, however:

"(4) An appeal may be taken from the circuit court in any special statutory proceeding under the same conditions, in the same manner and with like effect as from a judgment, decree or order entered in an action or suit, unless such appeal is expressly prohibited by the law authorizing such special statutory proceeding."

ORS chapter 24 is a special statutory proceeding, being Oregon's version of the Uniform Enforcement of Foreign Judgments Act.[5] ORS 24.110 provides:

"An appeal may be taken by either party from any judgment, order or decision sustaining or setting aside a registration on the same terms as an appeal from a judgment, order or decision of the same court."

The jurisdictional issue, then, is whether the order striking defendant's petition is an "order or decision" sustaining a registration. By its terms it is not; in effect it is. We therefore resolve this initial question in defendant's favor by assuming for the purposes of this case that this appeal is from an order or decision sustaining registration of plaintiff's foreign judgment.

We turn now to what defendant asserts to be defenses under ORS 24.080. These separate defenses appear to us to be: (1) a claim of *res judicata*; (2) a claim of waiver and that defendant had an earlier Oregon judgment in his favor on the same cause of action which gave rise to the California judgment; and (3) a claim of election of remedies and estoppel. In order to understand these claims of defense, we set forth the significant events in chronological order:

*September 26, 1967:* Plaintiff was awarded an "interlocutory judgment of divorce" in the state of

---

[5] Oregon substantially adopted the 1948 Uniform Act. The 1964 Uniform Act has not been adopted in Oregon, although it has fewer procedural ambiguities than found in the 1948 Act. *See* 13 ULA (Master Edition) 173.

California. Based upon a property settlement agreement, the interlocutory judgment provided in part as follows:

"2. Defendant is ordered to pay to plaintiff forthwith the sum of $1,000.00 on an existing note in the amount of $5,000.00. The balance of $4,000.00 is payable in 24 months with interest at the rate of six percent (6%)."

*July 23, 1974:* Plaintiff filed an action in circuit court in Lane County, Oregon, alleging in part as follows:

"That on or about the 26th day of September, 1967, the defendant became indebted to the plaintiff in the sum of $4,000.00 payable on September 26, 1969 with interest at the rate of 6% per annum from September 26, 1967 until paid for money had and received by said defendant for the use and benefit of the defendant."

Plaintiff further alleged that no part of the sum had been paid and prayed for judgment for $4,000, with interest at the rate of six percent per annum from September 26, 1967, until paid.

*January 20, 1976:* The Lane County case came on for trial, and plaintiff unsuccessfully moved for an order of voluntary nonsuit. Plaintiff thereon rested without producing any evidence in support of her complaint. Defendant rested without producing any evidence and moved for a "Directed Verdict." The motion was allowed.[6]

*January 27, 1976:* The Lane County Circuit Court entered judgment in favor of defendant and against plaintiff "on Plaintiff's Cause of Action and for Defendant's costs and disbursements."

---

[6]There is nothing in the record to indicate a jury was empaneled; therefore, a "verdict" could not be directed. We treat the motion as being equivalent to a motion for "dismissal" by a defendant, after resting, on the equity side; i.e., the motion is to alert the court to a defendant's contention that defendant is entitled to prevail as a matter of law, assuming the truth of all evidence favorable to plaintiff, together with all reasonable inferences therefrom in favor of plaintiff.

*April 30, 1976:* Final judgment was entered in the California case providing in pertinent part:

> "The court orders that:
>
> "* * * * *
>
> "* * * a Final Judgment of Dissolution be entered, and that all of the provisions of the interlocutory judgment, which was entered on Sept. 27, 1967 * * * be made binding the same as if set forth in full, and that the parties be restored to the status of unmarried persons. It is further ordered that this judgment be entered nunc pro tunc as of January 3, 1968."

■ On appeal, defendant directs our attention to the "rule of conflicting judgments," as being dispositive of the matter. A general statement of the rule is:

> "A judgment rendered in a State of the United States will not be recognized or enforced in sister States if an inconsistent, but valid, judgment is subsequently rendered in another action between the parties and if the earlier judgment is superseded by the later judgment under the local law of the State where the later judgment was rendered." Restatement (Second) of Conflict of Laws § 114.

We have recognized the rule in *Morphet v. Morphet,* 263 Or 311, 502 P2d 255 (1972):

> "In determining the requirements of full faith and credit as between conflicting judgments of two other states, the general rule is that judgment entered last in time prevails. *Sutton v. Leib,* 342 US 402, 72 S Ct 398, 96 L ed 448 (1952); *Morris v. Jones,* 329 US 545, 67 S Ct 451, 91 L ed 488 (1947); Ginsburg, Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments, 82 Harv L Rev 798, 799-800 (1969)." 263 Or at 322.

Defendant urges that application of the rule entitles him to have registration of the California judgment set aside. It appears that both the California and Oregon judgments were rendered on the same cause of action (the debt agreed upon in the property settlement agreement), and certainly the judgments are, therefore, inconsistent.

We do not know how this point was presented to the

trial court, for the trial court file contains no written memo or argument in support of defendant's petition or in opposition to plaintiff's motion to strike. The oral argument on the motion was not reported. In this court, in an attempt to take advantage of the rule, defendant argues that his Oregon judgment of January 27, 1976, is later in time than the plaintiff's California judgment. Defendant does not advise us in his brief as to why we are to consider the California judgment as being earlier than January 27, 1976; therefore, to pursue this contention, he necessarily asks us to infer either one or both of the following: (1) that the California interlocutory decree is the judgment sought to be registered, or (2) that the "nunc pro tunc as of January 3, 1968" portion of the final decree causes it to be earlier in time than the Oregon Judgment, although the California final decree was dated and entered after the Oregon judgment.[7]

■■ Despite its name, an interlocutory decree in California is a final and conclusive adjudication and is, therefore, *res judicata* on all matters decided therein, including the property rights of the parties. *Kulchar v. Kulchar,* 1 Cal3d 467, 82 Cal Rptr 489, 462 P2d 17 (1969); *Harrold v. Harrold,* 127 Cal App2d 582, 274 P2d 183 (1954); *Leupe v. Leupe,* 21 Cal2d 145, 130 P2d 697 (1942); 33 Cal Jur 3d 239, Family Law § 672-674 (1977). *See also Cogswell v. Cogswell,* 178 Or 417, 167 P2d 324 (1946). The filing of the final order was necessary to complete the dissolution of the marriage but did not affect and could not modify the property distribution established by the interlocutory decree. *Dupont v. Dupont,* 4 Cal2d 227, 48 P2d 677 (1935); *Leupe v. Leupe, supra; Harrold v. Harrold, supra. See also Cogswell v. Cogswell, supra.*

For the purpose of this opinion, therefore, we hold

---

[7] If we were to hold that the final decree, despite the "nunc pro tunc" provision, is effective as of the time it is dated and entered, it becomes the latest "inconsistent" judgment, and defendant loses by application of the rule he urges as being dispositive. We shall assume, without deciding, that the effective date is January 3, 1968, as defendant implicitly urges.

the Oregon judgment to be an inconsistent, but valid, judgment subsequently rendered. This holding is of no avail to defendant, however, on the record before us.

■ In his petition *defendant nowhere asserts that the Oregon judgment is the later of inconsistent judgments.* He asserts in his first separate defense:

> "that the Oregon judgment is *res judicata* of the claim Plaintiff seeks to enforce herein and that registration of the foreign judgment creates a condition of conflict of judgments on the records of this Court."

That defendant misconceives the applicability of the doctrine of *res judicata* appears from his brief, where he states in part:

> "* * * Plaintiff's registration of the foreign judgment is certainly based upon the same set of operative facts as was her 'Money Had and Received' complaint. * * *"

It is not her *registration* of the foreign judgment that is based upon the same set of operative facts; it is her *earlier* California judgment contained in the interlocutory decree that is based upon the same set of operative facts as were present in the later *indebitatus assumpsit* action in Oregon. We fail to understand how the Oregon judgment can be *res judicata* in these circumstances. The first, final and complete adjudication of the merits of the claim of debt owed by defendant to plaintiff was in the California proceeding. That adjudication could have been asserted by plaintiff in any later litigation between these parties concerning the same claim; conversely, under the doctrine of merger defendant could have asserted that adjudication to bar any action instituted by plaintiff on the original claim rather than the judgment. The doctrine of *res judicata* does not aid this defendant.

■■ For his second defense, defendant avers that plaintiff "failed to make the [interlocutory] decree a final judgment," hid herself from defendant (thus allegedly preventing his performance of his agreement or the decree), and thereby "waived" performance by defendant. As above noted, the interlocutory decree itself was

[ 68 ]

a valid subsisting judgment capable of enforcement between the parties. Defendant makes no contention he could not have satisfied that judgment by payment into the registry of the California court. The claim of waiver does not impress this court and is frivolous.[8]

Defendant's second defense goes on to allege matter devastating to his contention of right to prevail upon the rule of conflicting judgments. He alleges that at the time he secured his Oregon judgment, there was no final judgment in California, that the final California judgment was secured April 30, 1976, that it is "a judgment sought to be herein enforced" and that "[d]efendant's judgment is prior in time and right." (emphasis added) That position did not call upon the trial court, and does not call upon this court, to hold for defendant as having the later of conflicting judgments.

For his third and final defense, defendant contends that the California judgment was only interlocutory at the time plaintiff filed her action in Oregon in *general assumpsit* and, by not bringing an action upon "a foreign judgment,"[9] plaintiff "elected remedies." He alleges that he relied upon the "actions of Plaintiff,"

___

[8] Plaintiff asserted in her motion to strike defendant's petition that it was both sham and frivolous. The same allegations cannot be both. A frivolous plea is one which, although true in its allegations, is totally insufficient in substance. A sham plea is one good in form but false in fact; it is a pretense because it is not pleaded in good faith. *See, e.g.,* Black's Law Dictionary (Revised Fourth Edition) 1968.

[9] In his brief defendant takes a somewhat different approach in reliance on ORS 24.160, which saves to the judgment creditor the right to bring an action to enforce the judgment instead of proceeding under the Uniform Enforcement of Foreign Judgments Act. In the brief he characterizes her *indebitatus assumpsit* action as being an action under ORS 24.160 to enforce her foreign judgment. This position is directly contrary to that asserted in his pleading where he contends she did not bring her *assumpsit* action on the foreign judgment and by this proceeding under ORS chapter 24 is *changing* "her theory of recovery to a foreign judgment." Again, on appeal, defendant attempts to shift his position from that taken in the trial court. This we refuse to countenance.

Further, we view the reference in ORS 24.160 to "an action to enforce his judgment" as meaning the traditional common law action on a foreign judgment. *See* 50 CJS 441, Judgments, §§ 867 et seq., and 47 Am Jur 2d 45, Judgments, § 930.

had to obtain attorneys and spend money in defending the first Oregon case, and substantially changed his position making it not "fair and equitable" to allow plaintiff to change her theory of recovery to a foreign judgment. From that he concludes that plaintiff "has elected her remedy and is estopped in equity" to enforce the foreign judgment "on the same claim."

■ We confess to finding some difficulty in coming to grips with these intermingled contentions of equitable estoppel and election of remedies. Defendant's briefs are of some assistance in this respect, however, for nowhere in either of his briefs (other than the abstract of pleadings) does the word "estoppel" appear, and the doctrine of equitable estoppel is not discussed under any other appellation. We view the claim of equitable estoppel made in the pleadings as having been abandoned on appeal.

■ Finally, we come to defendant's claim that by filing her *general assumpsit* action and losing it plaintiff is barred from enforcing this foreign judgment under the doctrine of election of remedies. We have already alluded to one of defendant's two arguments on this point; namely, that of the applicabilty of ORS.24.160. *See* fn. 9, *supra,* and accompanying text. As there indicated, plaintiff did not in the earlier Oregon case bring an action to enforce the judgment.

Defendant quotes from *Ladd v. General Insurance Co.,* 236 Or 260, 387 P2d 572 (1964):

"Election of remedies ordinarily characterizes the situation in which a plaintiff who has two or more available avenues to the same general relief pursues one to judgment. See Note, 36 Harv L Rev 593 (1923). He may thereafter be precluded from pursuing the others. *Union Trust Co. of Spokane v. Wiseman,* 10 F2d 558 (D Or 1926); see Annotation, 6 ALR2d 10, 49 (1949). When enforced, the rule forbids subsequent litigation, either to enhance a meager victory won in the first effort or to rehabilitate a defeat suffered there." 236 Or at 264.

Defendant then tells us that "*The Restatements [sic] of*

*Judgments,* § 65 (1942) supports the Oregon view." Defendant follows this assertion with what, at first blush, appears to be a quotation of the language of Section 65.[10] The material is not an exact quotation but does no violence to the substance of the Restatement language, which is actually:

> "Where a judgment on the merits is rendered in favor of the defendant in an action to enforce one of two or more alternative remedies, the plaintiff cannot thereafter maintain an action to enforce another of the remedies."

Inherent in defendant's invocation of *Ladd* and Section 65 is the contention that *assumpsit* and enforcement of the foreign judgment were alternative remedies available to plaintiff. Therein is the Achilles' heel of defendant's position, as may be demonstrated from the very authorities upon which he relies.

In *Ladd* plaintiff insured suffered a loss under a policy issued by defendant, and during adjustment negotiations the parties arrived at a mutually satisfactory settlement of all but one item, which they left open for later approval. Subsequently they were unable to agree upon the insurer's duty under the memorandum of the settlement agreement. The policy provided that no action would lie unless commenced within one year from the date of loss. After the year but within the statutory period of limitation, the insured brought action upon the policy concerning the item left open. The insurer prevailed under the policy period of limitations. The insured timely commenced a subsequent action on the memorandum agreement; the insurer asserted both *res judicata* and election of remedies as a bar. The language above quoted from *Ladd* in defendant's brief is an introduction to the court's distinguishing the two defenses. It was held in *Ladd* that there was no election of remedies because the plaintiff in fact had but one remedy, and it was not

---

[10]It is true that the material is not enclosed by quotation marks, but it is set in and single spaced as is the custom with quotations of several lines.

the one asserted by the plaintiff in the first case, in which defendant had prevailed.

Restatement of Judgments, Section 65, is in accord.[11] Subsection (2) of Section 65 provides as follows:

"(2) Where a judgment is rendered in favor of the defendant because the plaintiff seeks a form of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy."

For the reasons we now present, plaintiff is entitled to prevail under both *Ladd* and the Restatement, for upon the record before us the remedy of *assumpsit* was not available to plaintiff, and she is therefore not precluded from maintaining this statutory procedure for enforcement of her foreign judgment. The doctrine of merger operates in her favor in the case at bar. That doctrine is as well spelled out in Restatement of Judgments, Section 47, as any other place:

"Where a valid and final personal judgment in an action for the recovery of money is rendered in favor of the plaintiff,

(a) the plaintiff cannot thereafter maintain an action against the defendant on the cause of action; but

(b) the plaintiff can maintain an action upon the judgment."

The Comment to Section 47 states the rule that when the judgment for plaintiff is rendered, the original claim of the plaintiff is "extinguished" and a new cause of action on the judgment is substituted for it.[12]

---

[11] One would never discover this from the briefs. In his brief defendant fails to inform us that he drew our attention only to subsection (1) of Section 65, and plaintiff's brief does not address the Restatement at all. We are aware that a lawyer must be an advocate. On the other hand, lawyers should not misdirect the court as to the law by the statement of a rule without its applicable exceptions or qualifications.

[12] It is true, of course, that if a plaintiff were to ignore his money judgment and proceed again upon his original cause, he would be successful unless defendant pleads the judgment as a defense under the doctrine of merger. In the case at bar, defendant has attached to his petition a copy of plaintiff's complaint in *assumpsit* and the resulting judgment in defendant's favor. He has not, however, made a part of the record the defenses

Since plaintiff's claim was "merged" in her California judgment, action upon that claim was not available, and the doctrine of election of remedies can no more avail this defendant than the defendant in *Ladd.*

What should have been a simple case has consumed an inordinate amount of judicial time at the trial and appellate levels. The underlying situation in the beginning was simple. The parties made a property settlement agreement which required the defendant to pay $4,000 to plaintiff by September 26, 1969, with interest at the rate of six percent per annum from September 26, 1967. He has paid no part of that sum. This decision will require him to do no more than what he originally agreed to do and what the California court ordered him to do. The complications arose initially when, for some reason we find it difficult to comprehend, plaintiff filed the action for *indebitatus assumpsit* rather than the common law action upon a foreign judgment or the statutory equivalent. The complications were compounded when defendant urged in his petition in the case at bar that his Oregon judgment was earlier in time than plaintiff's California judgment and then, upon appeal, argued exactly the opposite. Plaintiff's brief was of little assistance in meeting defendant's argument, since the only idea advanced by plaintiff was that Oregon must give full faith and credit to the California judgment if it is valid. That is the general rule. The points which defendant has asserted, however, go to defenses which he argues have arisen since the rendition of plaintiff's California judgment. *See* Restatement of Judgments, Section 47, Comment *e.* We shall not further refer to other matters concerning the briefs already noted.

Affirmed.

which he asserted in the *assumpsit* action. In the rather singular circumstances of this case, we assume that he asserted all available defenses which could have been litigated in that action. This is by way of analogy to the rule of *res judicata* that a party is concluded by final judgment not only as to matters actually litigated but as to all matters which could have been properly litigated as well.