Argued and submitted September 9, 1980,
reversed and remanded March 31,
petition for rehearing denied May 19, 1981

# WASHINGTON SQUARE, INC.,
*Petitioner,*

*v.*

# FIRST LADY BEAUTY SALONS, INC. et al,
*Respondents.*

## (CA 13158, SC 26702)

625 P2d 1311

Carrell F. Bradley, of Schwenn, Bradley, Batchelor & Brisbee, Hillsboro, argued the cause for petitioner. Briefs were filed by Charles R. Markley, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Michael J. Kavanaugh, Portland, argued the caused for respondents. Briefs were filed by John R. Faust, Jr. and Janice M. Stewart, of Hardy, McEwen, Newman, Faust & Hanna, Portland.

Before Denecke, Chief Justice, and Howell**, Lent, Linde, Peterson and Tanzer, Justices.

LENT, J.

**Retired November 30, 1980.

**LENT, J.**

Plaintiff filed a forcible entry and detainer proceeding to recover possession of premises leased to defendant[1] for use as a beauty salon. The trial court entered judgment for plaintiff. The Court of Appeals reversed, *Wash. Squ. v. First Lady Beauty Salons,* 43 Or App 269, 602 P2d 1083 (1979). We allowed review. ORS 2.520; 289 Or 373 (1980).

In 1973 plaintiff and defendant executed a lease which required defendant to pay in advance a specified minimum monthly rental payable on the first day of each month. The lease also required defendant to pay a percentage share of utilities and common area charges. The lease included a termination clause, which stated:

" * * * if Tenant shall neglect or fail to perform or observe any of Tenant's covenants and if such neglect or failure shall continue after notice, in the case of rent for more than five days * * * [or] * * * if Tenant shall neglect or fail to perform or observe any of Tenant's covenants which Tenant has neglected or failed to perform or observe at least twice previously, (although Tenant shall have cured any such previous breach or breaches after notice from Landlord, and within the notice period) that Landlord lawfully may, * * * immediately, or at any time thereafter, and without demand or further notice * * * [terminate] this Lease."

Thus the lease provided for the minimum monthly rental to be paid to the landlord on the first day of each month; for termination if the rent was not paid for more than five days after notice by the lessor; and, in the event the tenant had twice previously required notice of delinquent rental payment, the landlord could terminate the lease without further notice upon a third failure to pay the rent when due.

Although the lease required the minimum rent to be paid in advance without notice or demand, it was the landlord's practice during the lease period to prepare an invoice for the minimum rent plus an estimated share of common charges and water and sewer costs. The invoices

---

[1] We treat First Lady Beauty Salons, Inc., a corporation, as the only proper defendant.

would be sent to the tenant, and the tenant's payments were almost always received by the landlord after the first day of the month.

On August 1, 1977, plaintiff wrote to defendant demanding in full the July, 1977, rent and threatening to terminate if not paid within five days. Defendant paid. On May 19, 1978, plaintiff sent to defendant a similar delinquency notice. Defendant again paid and plaintiff accepted the payment.[2] On October 11, 1978, plaintiff notified defendant of another delinquency for failure to pay the rent due October 1 and declared the lease terminated. Because of defendant's failure to pay the rent due on October 1, 1978, the plaintiff rejected defendant's tender of the October rent and filed this f.e.d. proceeding.

In its second amended answer, the tenant denied the material allegations of plaintiff's amended complaint and set forth four affirmative defenses.[3] The first affirmative defense was a claim of failure to provide the defendant with notice of default. The second was a claim that the parties had modified the lease by parol and by conduct. The third was a claim that any failure to pay the rent in a "strictly timely fashion" was due to excusable accident or mistake of the defendant. The fourth was a claim that plaintiff was estopped by its conduct from terminating the lease.

■    Trial apparently commenced in the afternoon. In the forenoon of that day, plaintiff first filed a motion to strike the third and fourth affirmative defenses "upon the grounds that such material is sham, frivolous, irrelevant and redundant."[4] Subjoined was an argument that past acceptance of late payments of rent is not a "waiver" of the

___

[2] In both May and October, 1978, the defendant had issued checks to plaintiff prior to the date the plaintiff's notices of delinquency were received by defendant. Apparently the checks and letters crossed in the mail.

[3] Defendant also pleaded counterclaims, but a discussion of them is not necessary to this opinion.

[4] We have often noted that a pleading cannot be both sham and frivolous because they are mutually exclusive terms. *See,* for example, *Andrysek v. Andrysek,* 280 Or 61, 69, n. 8, 569 P2d 615 (1977). Lawyers yet persist in such motions. The practice seems to result from copying the words of former ORS 16.100 without giving much thought to the meaning of the bases for a motion under the statute. Since that statute has now been superseded by ORCP 21 D, perhaps it is time for a new beginning. This could be facilitated by trial judges refusing to consider motions to strike which are based upon a contention that the material sought to be stricken is both sham and frivolous.

right to timely payments, citing *Ratoza v. The Flame, Inc.,* 277 Or 185, 559 P2d 1273 (1977). Before the motion could be heard, plaintiff filed a combined reply to the affirmative defenses and demurrer to the third and fourth affirmative defenses "upon the grounds that those defenses do not state facts sufficient to constitute a cause of action."[5] Subjoined was an argument in support of the demurrer that plaintiff relied upon the rule of *Ratoza v. The Flame, Inc., supra.*[6]

A conference among counsel and the trial judge was held in chambers before the commencement of trial, and the trial judge first "denied" the demurrers and then granted the motion to strike the third and fourth affirmative defenses. That afternoon, trial commenced upon the amended complaint, the second amended answer, with the first two affirmative defenses, and the reply.

At the close of evidence, the trial judge took the matter under advisement. Three days later he issued a letter opinion. That opinion is not a part of the trial court file, but the parties have referred to it in argument and are apparently in no disagreement as to its terms. By the letter, the trial judge found that the complaint was true and stated his belief that the plaintiff was entitled to prevail, both under the lease and ORS 91.090:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

---

[5] Since those defenses did not purport to state causes of action, there was no need for either to "state facts sufficient to constitute a cause of action." We assume that plaintiff interposed its demurrers on the authority of former ORS 16.250:

> "The plaintiff may demur to an answer containing new matter when it appears upon the face thereof that such new matter does not constitute a defense or counterclaim; or he may, for like cause, demur to one or more of such defenses or counterclaims, and reply to the residue."

[6] The second amended answer was filed on Friday, with the trial scheduled to start on Monday. The motion to strike and the reply and demurrer were filed on Monday, the morning of trial. This timing is not conducive to a fair opportunity for a trial judge to consider the legal issues presented for decision.

The letter opinion discloses that the trial judge held that the defendant's ability and willingness to pay the October, 1978, rent and subsequent rent did not cure its "default" and therefore the first affirmative defense had not been established.[7]

With respect to the second affirmative defense, the trial judge noted that all evidence was under an offer of proof and ruled that the offer of proof was rejected. He then ruled that under both the Statute of Frauds and the terms of the lease,[8] any modification of the lease had to be in writing. He also concluded that "[a]cquiescence to late payments, if that occurred, did not amount to a modification of the lease" because of the lease requirement of written modification and did not constitute a defense to this action because of the rule of *Ratoza v. The Flame, Inc., supra.*

The trial court then made and "filed" judgment of restitution. Defendant appealed, assigning as error the trial court's decisions:

I. In granting the motion to strike the third and fourth affirmative defenses.

II. In holding that defendant failed to establish its second affirmative defense.

---

[7] We do not quite understand what this had to do with the alleged defense that plaintiff had failed to provide defendant with notice of default, but there does not appear to have been any timely request for special findings, former ORS 17.131, and we mention the finding only because, inherent therein, is a finding that there was a default.

[8] ORS 41.580(5) provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *.

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or any interest therein."

The lease provided:

"There are no oral or written agreements between Landlord and Tenant affecting this Lease. This Lease may be amended only by instruments in writing executed by Landlord and Tenant."

III. In holding defendant's second affirmative defense did not constitute a defense to an f.e.d. action.

IV and V. In sustaining objections to the receipt in evidence of testimony and exhibits going to the claim of modification of the lease.

VI. In sustaining objection to testimony and exhibits going to plaintiff's motive for terminating the lease.

VII. In sustaining objections to exhibits which would have gone to establishing the willingness and ability of defendant to pay rent in October, 1978, and subsequently thereto.

VIII. In denying defendant's motion for the return of a deposit made into court.

The Court of Appeals reached only the first assignment of error, holding (1) that plaintiff's right of termination was governed by the lease rather than the statute, ORS 91.090, and (2) defendant was entitled to attempt to prove its third and fourth affirmative defenses.

*Rainey v. Quigley,* 180 Or 554, 178 P2d 148 (1947), is our leading case. There, the tenant sued in equity to enjoin the landlord's prosecution of an f.e.d. cause. At the time the landlord had commenced the f.e.d. cause, the lease had been in force some 16 months. By its terms monthly payments of rent were required to be made on the first day of each month. Not once during the 16 months had rent been paid earlier than the 23rd day of the month. The landlord had never given the tenant any notice that the lease would be terminated if payments were not made on the date due.

The landlord relied upon the statute, then OCLA, § 8-309 and now ORS 91.090. This court summarized the tenant's position as follows:

"The argument of the plaintiff [tenant] may be thus summarized: Forfeitures are not favored by equity. Where strict performance of an agreement to pay rent has been waived for a considerable period of time, notice must be given of an intention to return to the strict terms of the lease before a forfeiture can be declared. The statute is not self-executing, and the conduct of the defendant [landlord]

in accepting past due payments of rent rendered the statute ineffective. As the result of such conduct the plaintiff was 'lulled into a sense of security', and led to believe that the defendant would not exercise her right of forfeiture for nonpayment of rent on the day fixed by the lease."

180 Or at 565. In the opinion the court reviewed a wealth of decisions, from which the court concluded that the majority, and better, rule was that although a court of equity could relieve against a forfeiture fixed by the parties in their contract, it could not relieve against the forfeiture fixed by a statute. The court then squarely held that the statute foreclosed the power of the court in equity to grant the relief sought, saying:

"So that, if this case involved nothing more than the contract of the parties, there would be no doubt of the jurisdiction and power of the court to grant the relief which the plaintiff seeks. But, unless we are to ignore or *rewrite* the statute, that power cannot be exercised here, for, under the statute, the failure of the tenant to pay the rent reserved within the time prescribed 'shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful.' *Nor can the acceptance of delinquent payments in previous months alter the case,* because 'such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent.' How, then, can it be said the plaintiff was 'lulled into a sense of security', when the law warned him that he would not be secure in the event of a subsequent default?" (Emphasis added.)

180 Or at 565-566. That rule has been consistently followed in subsequent cases. *See, e.g., Ratoza v. The Flame, Inc.,* 277 Or 185, 559 P2d 1283 (1977); *Fry v. D. H. Overmyer Co., Inc.,* 269 Or 281, 525 P2d 140 (1974); *State Highway Comm. v. Demarest,* 263 Or 590, 503 P2d 682 (1972).

■    The statute and the lease must be considered together. The statute provides for a grace period of 10 days "unless a different period is stipulated in the lease." Here, the lease provides for a five-day grace period after notice, which is substituted for the statutory "10 days without notice." However, the remainder of the statutory provisions

apply so that acceptance of the late payment merely reinstates the lease and does not waive its terms. Here, the lease, which was reinstated by acceptance of late payments, further provided that the landlord could terminate the tenancy upon the third default if it had previously notified the tenant of two prior defaults, even though the tenant had cured the default and the landlord had accepted the late payment.

We hold, therefore, that under the terms of both the lease and of the statute no notice of default was necessary in October of 1978, and the trial judge was correct in holding against the defendant on the amended complaint and the first affirmative defense.

Defendant contends that the parties modified the contractual provision requiring payment to be made on the first day of each month by following the practice of paying upon receipt of invoices from plaintiff.

Leases for over one year are required by the statute of frauds to be in writing, ORS 41.580(5). A lease required by the statute of frauds to be in writing may be modified only by an agreement also in writing if the lease as modified would itself be within the statute of frauds. *Norris, Beggs & Simpson v. Eastgate,* 261 Or 56, 63-64, 491 P2d 1018 (1972). Oral modifications which relate to essential terms of a lease are ineffective.[9] *Id.* The time for payment of rent in a lease agreement is an essential term.

We have now concluded that under proper rules of law there was evidence from which the trial court could, and did, find that plaintiff had established the cause pleaded in the amended complaint and that, as a matter of law, defendant was not entitled to prevail upon its first and second affirmative defenses. It follows that the Court of Appeals erred as to the first ground upon which it reversed the trial court.

---

[9] Plaintiff also relies upon the lease provision that amendments must be in writing. See note 8, *supra.* If the contract containing such a provision need not, itself, be in writing, there is no reason that the parties could not modify that particular provision by parol as well as any other provision of a written instrument, given the other necessary elements of making a valid amendment to a contract.

■ The second ground of reversal was that the defendant was entitled to attempt to prove its third and fourth affirmative defenses of excusable accident or mistake and of estoppel. It will be recalled that the trial court struck these defenses upon plaintiff's pre-trial motion. We suppose that the trial court did so on the asserted grounds of irrelevancy or redundancy; we doubt that it was on the asserted grounds that the defenses were "sham and frivolous."

In its petition for review plaintiff concedes that "excusable neglect" or estoppel might be defenses to an f.e.d. cause; we agree. Plaintiff contends that neither defense was properly pleaded or applicable here; we agree.

■ We are at a loss to understand why the trial court "denied" plaintiff's demurrers to those defenses. Those defenses were pleaded in such terms as to amount to no more than legal conclusions. There is a better reason, however, to hold that defendant is not entitled to have a new trial on those defenses. It is clear from the record as a whole that defendant was relying upon the same evidence to establish those defenses as it was to establish its second affirmative defense of modification. The acceptance of late payments in this case does not constitute excusable accident or mistake or estoppel. To hold otherwise would require us to overrule *Rainey v. Quigley* and *Ratoza v. The Flame, Inc.,* both *supra,* by exalting the name or form attached to a defense over the substance of the defense. We have been furnished no reason to overrule those decisions.

It follows that the trial court did not err in rejecting the evidence by which defendant sought to prove the second, third and fourth affirmative defenses.

Our reversal of the Court of Appeals requires that we examine other of the defendant's assignments of error not reached by the Court of Appeals. One of those revived assignments of error concerns the rulings of the trial court rejecting evidence of the motive of the landlord in terminating the lease. Defendant contends that the real reason that plaintiff terminated was because plaintiff was dissatisfied with the amount of rent which was being received from tenant over and above the basic rent and calculated upon the amount of gross revenue received by

defendant. We do not find that any defense has been pleaded which would be established by such evidence. We express no opinion as to whether the motive of the landlord in asserting a right to terminate this lease would be germane to some theory of defense not presented by this case.

Another revived assignment of error is the denial of the defendant's motion to return money defendant deposited into court. Our decision as to the termination of the leasehold interest should control the trial court in resolving this matter. Upon the record in this cause, we express no opinion as to how plaintiff may recover "rent" for any period of occupancy by the tenant after the time of termination declared by the landlord.

Reversed and remanded to the trial court for further proceedings in accordance with this opinion.