Argued and submitted June 13, 2008, affirmed April 22, petition for review denied July 29, 2009 (346 Or 589)

CAPITAL CREDIT & COLLECTION SERVICE, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

Fariba T. ARMANI,
fka Fariba T. Robinson,
*Defendant,*

*and*

Fatemah MOGHADDAM,
*Defendant-Respondent.*

Multnomah County Circuit Court
040403862; A133535

206 P3d 1114

William R. Goode argued the cause and filed the brief for appellant.

Gary Roberts argued the cause for respondent. With him on the briefs was Schwabe, Williamson & Wyatt, P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff Capital Credit & Collection Services, Inc., a debt collector, brought this action to collect $3,990.57 in principal, interest, and attorney fees on a guaranty of a student loan that defendant signed for a friend, Armani.[1] Plaintiff alleged that it had been assigned a claim for the principal of the loan by the creditor, United States National Bank (US Bank). Defendant's amended answer alleged an affirmative defense of settlement and compromise and three counterclaims under the federal Fair Debt Collection Practices Act, 15 USC section 1692 (the Act). The matter went to the jury, which determined that the parties had entered into a prior settlement agreement and further determined that, in failing to carry out the terms of the settlement agreement and in pursuing litigation subsequent to settlement, plaintiff had engaged in conduct that constituted a violation of the Act. The trial court's judgment awarded plaintiff $4,159.57, the amount of the prior settlement. It also awarded defendant statutory damages of $1,000 under the Act, together with costs and disbursements and attorney fees. Plaintiff appeals, assigning error to the trial court's allowance of testimony to prove the settlement agreement, to the court's allowing defendant's motion to file a second amended answer, to the court's failure to strike defendant's affirmative defense of compromise and settlement, and to its failure to dismiss two of defendant's counterclaims under the Act at the conclusion of the trial. Defendant filed a cross-assignment of error, contending that the trial court erred in dismissing one of her counterclaims under the Act. We affirm.

The relevant facts are largely undisputed. We state them in the light most favorable to defendant, who prevailed before the jury on her affirmative defense and counterclaims. *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 542, 17 P3d 473 (2001). Defendant guaranteed Armani's student loan of $4,000 from US Bank. Armani defaulted, and US Bank referred the debt to plaintiff for collection and assigned to it any rights to collect the unpaid principal amount of the debt. On March 11, 2004, plaintiff sent defendant a letter demanding payment of the debt. Defendant discussed the debt with

---

[1] Armani was not served and is not a party to the case.

plaintiff's general manager, Taylor. Taylor told defendant that she would be sued if she did not honor the guaranty.

Defendant retained an attorney, Soofi. On April 9, 2004, Soofi contacted Taylor and offered to settle defendant's obligation by payment of the principal amount of the debt. Taylor told Soofi that, in view of their negotiations, he would not initiate a lawsuit. He then obtained US Bank's authorization to accept payment of the principal amount owed in full settlement of the debt. The bank confirmed that agreement in writing by an April 15, 2005, letter to Taylor: "US Bank agrees to accept [Armani's] offer to pay the principal balance of her * * * student loan. We will waive all accrued interest and consider this loan paid in full upon receipt of the principal payment."

Taylor testified that he and Soofi reached a settlement on April 15, 2004. Defendant agreed to pay the principal amount of the debt, $3,990.47, and plaintiff's "court costs" of $169. On April 26, Soofi and Taylor agreed to a payment schedule requiring defendant to pay the debt in two installments, a payment of $2,000 on May 31 and the balance of the obligation on June 30. As a condition of payment, Taylor agreed to send Soofi a letter confirming the settlement and providing any information that plaintiff had concerning Armani's location.

Soofi received defendant's $2,000 installment payment on May 14, and deposited it in a client trust account pending receipt of Taylor's letter. Soofi called Taylor on May 14 and again on June 4 and June 13, to remind him of his obligation to provide written corroboration of settlement and the debtor's whereabouts, so that she could forward defendant's payment. On May 14, Soofi reached Taylor, and he apologized for the delay and agreed to provide the letter. On June 4, Soofi left a message for Taylor. On June 13, she talked to Taylor again, and he agreed to provide the letter and to extend the first payment due date to June 30.

Soofi left for a two-week vacation on June 18, and instructed her secretary to look for Taylor's letter and to send a check to Taylor for the first installment when she received it. Unbeknownst to Soofi or Taylor, defendant's debt was already in the litigation pipeline. The matter had been

referred by plaintiff to its attorney, who had already filed the complaint in this proceeding on April 14, 2004. Defendant was served with the complaint and summons in late June. When Soofi returned from her vacation, she had a telephone message from defendant describing the complaint and expressing concern that the matter was not settled. Soofi called defendant and explained that the service of the complaint was probably a mistake. She wrote a letter to plaintiff's attorney on July 9, reiterating the terms of the settlement agreement, enclosing defendant's first payment, and asking that the complaint be dismissed.

Plaintiff disputed that the matter had been settled and continued to pursue this litigation. Plaintiff told Soofi that, once the complaint had been filed, there would be no settling the matter. Defendant filed an answer, asserting several affirmative defenses, including compromise and settlement, and three counterclaims under the Act. The trial court submitted two of the counterclaims to the jury, and the jury found for defendant, determining that the parties had reached a settlement of the underlying debt, and that the settlement included a requirement that plaintiff send Soofi a letter providing contact information for Armani before defendant was required to pay. The jury further found that defendant had complied with the terms of the settlement and that plaintiff's conduct subsequent to the settlement involved false, deceptive, or misleading representations in connection with the debt, the natural consequence of which was to harass, oppress, or abuse defendant.

■ On appeal, plaintiff assigns error to the trial court's consideration of oral testimony concerning the terms of the alleged settlement agreement and to the court's failure to strike defendant's affirmative defense of compromise and settlement, on the ground that any settlement reached by the parties was void and unenforceable under the statute of frauds. As plaintiff correctly notes, the underlying guaranty was subject to the statute of frauds as an agreement to answer for the debt of another, ORS 41.580(1)(b).[2] In plaintiff's view, the settlement agreement also was subject to the

---

[2] ORS 41.580(1)(b) provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and

statute of frauds, as a *modification* of the guaranty. *Wash. Squ. v. First Lady Beauty Salons,* 290 Or 753, 761, 625 P2d 1311 (1981) (explaining that an agreement governed by the statute of frauds likewise may be modified only by a written agreement if the agreement as modified would also be within the statute of frauds). Plaintiff contends that the settlement agreement modified the original guaranty by adding a new term—that payment was conditioned on defendant's receipt of a letter concerning Armani's whereabouts. Further, plaintiff contends, even if the settlement constituted a new and separate agreement from the original guaranty, it was still an agreement to pay the debt of another, and therefore subject to the statute of frauds.

Defendant contends that the settlement agreement was not a modification of the guaranty; rather, it was a separate agreement to settle defendant's obligation to plaintiff that was not an agreement to pay the debt of another and that was not independently subject to the statute of frauds.

We agree with defendant that the settlement agreement was not a modification of the guaranty. Defendant never disputed her obligation under the guaranty or that she owed the debt. The parties point to no provision of the guaranty that was changed by the parties' arrangement concerning the manner of the guaranty's payment.[3] Defendant did not take on a new obligation or modify an obligation to pay Armani's debt. The settlement was directed to the satisfaction of a previously existing obligation that was undisputed.

---

subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(b) An agreement to answer for the debt, default or miscarriage of another."

[3] The guaranty required defendant to guarantee and pay "any and all indebtedness" of the borrower to the bank. The guaranty contained provisions on the maximum liability of defendant, the meaning of "indebtedness," the nature of defendant's undertaking, the bank's rights toward the borrower, the duration of the guaranty, specification of the bank's rights against defendant, subordination of defendant's rights against the borrower, and assignment of the guaranty. The settlement was consistent with the text of the guaranty allowing the bank the "right to demand and collect from [defendant] all or any portion of [b]orrower's indebtedness."

Contrary to plaintiff's contention, we conclude that the settlement agreement itself was not a guaranty or an agreement to answer for the debt of another—it was purely a settlement of defendant's undisputed obligation to plaintiff under the terms of the guaranty. Accordingly, the trial court did not err in concluding that it was not subject to the statute of frauds and in admitting and considering oral testimony of the agreement's terms.[4]

■ In its second assignment of error, plaintiff asserts that the trial court abused its discretion in allowing defendant to file a second amended answer and counterclaims and in failing to strike the counterclaims. Plaintiff does not direct any argument to the question of any abuse of the trial court's exercise of discretion in allowing the filing of the second amended answer. ORCP 23 A (leave of court to amend pleading "shall be freely given when justice so requires"). Instead, plaintiff argues only about the legal sufficiency of the counterclaims. Therefore, we limit our discussion to those issues. Plaintiff's third and fourth assignments of error raise similar challenges to the legal sufficiency of the allegations of violations of the Act. Accordingly, we address those assignments together.

■ The Fair Debt Collection Practices Act is intended as a "remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Capital Credit & Collections Services, Inc.*, 460 F3d 1162, 1171 (9th Cir 2006). The Act provides for a right of action and strict liability for certain unlawful debt collection practices that are false, deceptive, misleading, unfair, or harassing. The Act provides

---

[4] The parties do not discuss, and we do not decide, the effect of ORS 41.580(1)(h) on the settlement agreement. That part of the statute of frauds requires that an "agreement, promise or commitment * * * to release any guarantor or consigner or to make any other financial accommodation pertaining to an existing debt" be in writing and subscribed by the party to be charged. That requirement, however, does not apply if no party to the agreement is a financial institution, consumer finance company, or mortgage banker. ORS 41.580(1)(h)(A). Moreover, a release of a guarantor or other financial accommodation of an existing debt that is not in writing, but that is "valid in other respects, is enforceable if the party against whom enforcement is sought admits in the party's pleading, testimony or otherwise in court that the agreement, promise or commitment was made." ORS 41.580(2)(b). In this case, as noted earlier, Taylor testified that a settlement agreement was reached on April 15, 2004.

for actual damages for the debt collector's failure to comply with the Act, 15 USC section 1692k(a)(1), and statutory damages of $1,000 per proceeding, per defendant, 15 USC section 1692k(a)(2)(A). The standard for whether there has been a violation of the Act is an objective one, viewing the facts from the perspective of the "least sophisticated debtor." *Clark*, 460 F3d at 1171. The Act describes the types of conduct that constitute violations. Section 1692d provides, in part:

> "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Section 1692e provides, in part:

> "A debt collector may not use any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt."

Section 1692f provides, in part:

> "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

In each subsection, the Act provides a nonexclusive list of examples of conduct that violates that particular provision.

The gist of defendant's case was that, in repudiating the settlement agreement and continuing to pursue a collection of the debt through litigation and in excess of the amount of the settlement, plaintiff violated sections 1692d and 1692e of the Act. Defendant also contended that plaintiff's conduct was unfair and unconscionable within the meaning of section 1692f. Defendant's second amended answer asserted three violations of the Act:

(1) In her first counterclaim, defendant alleged that, by refusing to comply with its obligations under the settlement agreement and continuing to pursue the litigation after settlement had been reached, plaintiff "engaged in conduct, the natural consequence of which, is to harass, oppress or abuse [defendant] in connection with the collection of a debt," in violation of 15 USC section 1692d.

(2) In her second counterclaim, defendant alleged that, by representing that the dispute had been settled, that

plaintiff would provide the required letter, and that defendant did not need to make the first payment toward the settlement agreement until plaintiff had provided the letter, and nonetheless serving defendant with the complaint and continuing the litigation, plaintiff "attempted to collect a debt from defendant * * * by use of false, deceptive or misleading representations," in violation of 15 USC section 1692e.

(3) Defendant's third counterclaim alleged that plaintiff's conduct as alleged in the first counterclaim constituted the use of unfair or unconscionable means to collect a debt, in violation of 15 USC section 1692f.

After both parties had submitted their evidence, plaintiff moved to strike each of the counterclaims.[5] Plaintiff contended that any communications made by plaintiff to defendant's attorney do not fall within the Act as a matter of law. Plaintiff also argued that, in the absence of an agreement by plaintiff that it would not pursue litigation on the guaranty, a continuation of the litigation was not, as a matter of law, a violation of the Act. The trial court granted plaintiff's motion with respect to the third counterclaim, which alleged a violation of 15 USC section 1692f, because it did not believe that the evidence would support a finding that plaintiff had acted through unfair or unconscionable means. The court allowed the first and second counterclaims to go the jury. By special verdict, the jury found that plaintiff had engaged in conduct that constitutes violations of 15 USC sections 1692d and e.

On appeal, plaintiff continues to raise an assortment of legal challenges to the trial court's decision to submit the two counterclaims to the jury. We confine our examination to the legal bases for the motion for directed verdicts that were presented to the trial court. ORAP 5.45(1). Those legal bases were that representations made to defendant's attorney were not actionable under 15 USC section 1692e and that filing and maintaining a lawsuit were insufficient to create liability under either 15 USC section 1692d or section 1692e. We review the trial court's determinations on the motion for

---

[5] We treat that motion as a motion for a directed verdict under ORCP 60.

directed verdicts for errors of law. *Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307 (1996).

Plaintiff first contends that, the purpose of the Act being the protection of unsophisticated and vulnerable consumers, representations or collection efforts made to the consumer's attorney do not provide the basis for a claim under the Act. Several federal courts have weighed in on that issue, and there appears to be a split among the circuits. In *Guerrero v. RJM Acquisitions, LLC*, 499 F3d 926, 936 (9th Cir 2007), a panel of the Ninth Circuit held, with one judge dissenting, that, when a debtor is represented by an attorney and a "false, deceptive, or misleading representation" is directed only to the debtor's attorney, but not to the debtor, the communication is not actionable under section 1692e. Under that logic, communications made by plaintiff to Soofi would not be actionable.

In *Sayyed v. Wolpoff & Abramson*, 485 F3d 226, 232 (4th Cir 2007), the Fourth Circuit held that a communication to the debtor's counsel, regarding a debt collection lawsuit in which counsel was representing the debtor, were within the scope of the Act. And in *Evory v. RJM Acquisitions Funding LLC*, 505 F3d 769, 773 (7th Cir 2007), the Seventh Circuit held that liability attaches under sections 1692d, 1692e, and 1692f of the Act for false, misleading, or deceptive representations or other abusive, deceptive, or unconscionable acts against a debtor's attorney.

We conclude that *Sayyed* and *Evory* are better reasoned and that a "false, deceptive, or misleading representation or means in connection with the collection of any debt" under section 1692e of the Act includes communications by the debt collector to the debtor's attorney. Section 1692e includes examples of conduct that violate the section, including various acts of "communication."[6] The Act defines "communication" broadly as "the conveying of information regarding a debt *directly or indirectly to any person* through any

---

[6] Section 1692e(8) proscribes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Section 1692e(9) makes unlawful the "use of any written communication" that simulates or is falsely represented to be an official, governmental document. Section 1692e(11) makes unlawful the "failure to disclose in the initial written

medium." 15 USC § 1692a(2) (emphasis added). A "representation" under section 1692e, then, could include specific "communications" that can be "directly or indirectly" made to the debtor. The other conduct that is specifically and generically defined as actionable representations under section 1692e would have that same characteristic—of being a direct or indirect communication to the debtor. There is no reason to construe the section to cover only certain indirect communications and not others. The text of section 1692e plainly proscribes "*any* false, deceptive, or misleading representation or means in connection with the collection of any debt." (Emphasis added.) Similarly, a "debt collector" under the Act is "any person who * * * regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due." 15 USC § 1692a(6) (emphasis added). We construe "representation" under section 1692e to include direct or indirect communications to the debtor and indirect communications to include communications to the debtor through the debtor's attorney.[7]

Our conclusion is supported by the result reached by the Supreme Court in *Heintz v. Jenkins*, 514 US 291, 293, 115 S Ct 1489, 131 L Ed 2d 395 (1995), a case involving a claim under the Act for communications between the creditor's attorney and the debtor's attorney. The Court held that the Act encompasses communications between lawyers in the context of litigation. Although the issue on review in that case was whether the creditor's lawyer was a "debt collector," the claim under the Act was based on a communication with the debtor's attorney. The Court's holding implicitly suggested that communications with the debtor's attorney are

---

communication with the consumer * * * that the debt collector is attempting to collect a debt * * * and the failure to disclose in subsequent communications that the communication is from a debt collector * * *."

[7] That is not to say that the standard for evaluating whether a representation is deceptive or misleading under Section 1692e might not differ, depending on whether the recipient is the debtor or the debtor's attorney. As observed in *Evory*, 505 F3d at 774,

"[i]t is true that a lawyer is less likely to be deceived, intimidated, harassed, and so forth * * * than a consumer. But that is an argument not for immunizing practices forbidden by statute when they are directed against a consumer's lawyer, but rather for recognizing that the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer."

subject to the Act. Thus, whether plaintiff's communications with defendant's attorney in this case constituted a violation of the Act was a question for the jury.

Plaintiff contends, further, that the continuation of litigation after the parties reached a settlement is not, as a matter of law, a violation of the Act, because plaintiff never expressly agreed to discontinue the litigation—*i.e.*, never "misrepresented" that it would discontinue litigation. That is particularly so, plaintiff asserts, in light of the fact that there was a dispute as to the terms of the settlement agreement and whether a letter from Taylor as to Armani's location was a prerequisite to payment.

The Supreme Court's decision in *Heintz* disposes of plaintiff's contention. In *Heintz*, a debtor sued a lawyer and his law firm under the Act because of a false statement by the lawyer to the debtor's counsel about the amount allegedly owed. The Court held that conduct engaged in through litigation can constitute a violation of the Act and that the Act "applies to litigating activities of lawyers." 514 US at 294. The Court rested its conclusion on the definition of "debt collector" at section 1692a(6), as including those who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." The Court's reasoning undercuts plaintiff's claim that there should be an immunity from liability under the Act for litigation actions.[8]

■      Defendant's core assertion was that, after the parties had settled, it was improper under the Act for plaintiff to continue to take a position in the litigation and make representations that were inconsistent with what the jury ultimately determined to be the terms of settlement. Generally, whether a debt collector's conduct has violated the Act is a question of fact for the jury, unless no reasonable jury could find a violation. *Turner v. J.V.D.B. & Associates, Inc.*, 330 F3d 991, 998 (7th Cir 2003) (question of violation of section 1692e was for jury, but violation of section 1692f was decided by court as a

---

[8] Even before *Heintz*, "[a]ll circuits to consider the issue, except for the Eleventh, have recognized the general principle that the [Act] applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition." *Sayyed*, 485 F3d at 232.

matter of law). We cannot conclude as a matter of law that the taking of a position in litigation that is inconsistent with the terms of a settlement agreement can never be a violation of the Act. The text of the Act itself does not preclude a claim on that theory. Plaintiff's argument to the contrary, although couched in terms of statutory construction, is really a challenge to the sufficiency of the evidence. To whatever extent plaintiff preserved those factual assertions, we determine, based on our review of the record, that the evidence was sufficient to permit defendant's claims to be submitted to the jury.

■     In her cross-assignment of error, defendant asserts that the trial court erred in striking her counterclaim under 15 USC section 1692f, contending that there is evidence from which the jury could have found that plaintiff's conduct in attempting to collect interest and attorney fees after the parties had settled their dispute was "unfair or unconscionable." Defendant's contention should have been raised by way of a cross-appeal because, if successful, it would require a reversal of the judgment and remand for trial of the claim under 15 USC section 1692f. ORAP 5.57.[9] *See Samuel v. King,* 186 Or App 684, 690-91, 64 P3d 1206, *rev den,* 335 Or 443 (2003) (holding that a respondent's assignment of error that would yield relief different from that awarded by trial court judgment was not properly before appellate court unless raised by cross-appeal); *Ricciardi v. Frink,* 133 Or App 436, 447, 891 P2d 1336, *rev den,* 321 Or 268 (1995) (where the respondent's contention would, if successful, require modification of the judgment, yielding "relief the trial court expressly denied, [the respondent] was obliged to file a cross-appeal"). We therefore do not address it.

Affirmed.

---

[9] ORAP 5.57 provides, in part:

"(1) A respondent must cross-assign as error any trial court ruling described in subsection (2) of this rule in order to raise the claim of error in the appeal.

"(2) A cross-assignment of error is appropriate:

"(a) If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b) If the relief sought by the appellant were to be granted respondent would desire reversal or modification of an intermediate ruling of the trial court."