[Filed November 15, 1887.]

# D. E. BUDD, APPELLANT, *v.* MULTNOMAH STREET RAILWAY COMPANY ET AL., RESPONDENTS.

CORPORATION — STOCK — " CALLS." — The board of directors of a private corporation may make "calls" upon stock without stating in their proceedings that such "calls" are for a corporate purpose, or that the business of such corporation required that such subscriptions should be paid.

DIRECTORS — POWERS OF CORPORATION. — Under section 3225 of Hill's Code, the power to make "calls" upon stock is one of the "powers" vested in the corporation, and to be exercised by the board of directors from and after their first meeting.

"CALL" — HOW MADE. — All that is necessary is that there should be some act or resolution which evinces or shows a clear official intent to render due and payable a part or all the unpaid subscription.

SAME — STOCKHOLDERS CANNOT QUESTION. — The necessity of the "call" is not open to question by the stockholders. The determination of that question is for the board of directors.

CORPORATION — FORFEITURE OF STOCK — STATUTE. — A corporation has no inherent power to forfeit or sell the shares of stock held by a delinquent stockholder. That is not a common-law remedy, and can only be exercised when it is expressly conferred by some statute.

BY-LAW FOR SALE OF STOCK FOR DELINQUENT ASSESSMENTS. — Subdivision 6 of section 3221 of Hill's Code confers upon private corporations power to make by-laws for the sale of any portion of its stock for unpaid assessments thereon ; but such by-laws must " not be inconsistent with any existing law."

BY-LAW — MUST BE GENERAL AND UNIFORM. — A resolution directed against the stock of a particular stockholder named is not a by-law. A by-law to be reasonable ought to be general ; it ought to affect every delinquent subscriber and all delinquent stock alike, and it ought to be directed against all within the sphere of its operation.

CONVERSION OF STOCK — MEASURE OF DAMAGES. — In case of the conversion of stock, the ordinary rule as to the measure of damages is the value of the stock at the time of the conversion, or a reasonable time thereafter; but an exception is, when a party has suffered only a technical conversion without any pecuniary loss, he can recover only nominal damages.

MEASURE OF DAMAGES — COMPENSATION. — As a general rule, the plaintiff ought to recover such sum as will compensate him for the injury he has suffered by the wrong of the defendant.

APPEAL from Multnomah County.   Affirmed.

*H. T. Bingham,* and *McDougall & Bower,* for Appellant.

*Killin & Starr,* and *Moreland & Masters,* for Respondents.

STRAHAN, J. — This is the second appeal in this action. The opinion of the court on the former appeal is reported in 12 Or. 271. After the cause had been remanded, an answer was filed

and issues of fact duly formed.   Upon a trial which was had before the court without a jury, the following facts were found:—

"1.  That the defendant, the Multnomah Street Railway Company, was organized by the filing of articles of incorporation in the office of the county clerk of Multnomah County, and in the office of the secretary of State, on the fourteenth day of July, 1882, and that D. E. Budd thereafter, on the twentieth day of July, 1882, in due form, subscribed for one hundred shares of the capital stock of said corporation, of the nominal par value of ten thousand dollars, and said Budd had no other title to stock in said corporation than such as he acquired by said subscription.

"2.  That at the meeting of the stockholders of said corporation, held on the twentieth day of July, 1882, E. J. Jeffrey, W. A. Scoggin, and D. E. Budd were duly elected directors of said corporation, and duly qualified as such directors.

"3.  That at a meeting of the board of directors of said corporation, held on the fourth day of April, 1883, at the city of Portland, where the principal office and place of business of said corporation was and is fixed, the said E. J. Jeffrey, W. A. Scoggin, and D. E. Budd were present, and it was then and there voted—E. J. Jeffrey and W. A. Scoggin, yes, and D. E. Budd, no—that an assessment of one hundred per centum be levied on all the stock of the corporation, the Multnomah Street Railway Company, said assessment to be paid by the 25th of April, 1883.

"4.  That on the fifteenth day of April, 1883, a written notice was served on D. E. Budd, signed by W. A. Scoggin, secretary of said corporation, and issued by order of E. J. Jeffrey, president, calling a meeting of said corporation, to be held on the twenty-sixth day of April, 1883, at the hour of two o'clock P. M., at the office of the company, in the city of Portland, for the purpose of disposing of D. E. Budd's stock for delinquent assessment.

"5.  That on the twenty-sixth day of April, 1883, a meeting of said directors of said corporation was held at the hour and at the place designated in the above-described notice, at which E. J. Jeffrey and W. A. Scoggin alone were present.   It was

voted by resolution, then and there passed, declared, and ordered, that 'whereas, D. E. Budd has failed to pay any part of the one hundred shares of the capital stock of the said corporation held by him, according to the resolutions passed by the board of directors of said corporation, on the fourth day of April, 1883, that his assessment upon said one hundred shares of stock be and is declared delinquent, and that the secretary be directed to sell said one hundred shares of stock, or so much as shall be necessary to satisfy such assessment, after giving thirty days' notice of the time and place of such sale, by publication in the Sunday Mercury, a paper published in, and of general circulation in the city of Portland, Oregon.

"6. That notice of the sale of said stock of D. E. Budd for delinquent assessment was published for thirty days in said Sunday Mercury, a weekly newspaper, next preceding the day of sale, which day of sale was by said notice designated as May 30, 1883, at the hour of two o'clock P. M.; and thereupon, on the said thirtieth day of May, 1883, at said hour, said stock of D. E. Budd, being one hundred shares, was offered for sale by W. A. Scoggin, secretary of said corporation, with the knowledge of and under the direction of E. J. Jeffrey, president, and was then and there bid off by and purchased by Amos N. King and E. A. King, who were the highest bidders for the same, for the sum of ten thousand two hundred dollars, of which amount ten thousand dollars was applied in payment of the subscription and assessment of said Budd.

"7. That the value of said stock, in case the subscription thereon had been paid, was ten thousand two hundred dollars, and subject to the assessment of one hundred per centum on said subscription; the value over and above such assessment was two hundred dollars.

"8. That after said sale said stock was transferred on the books of said corporation from the name of said D. E. Budd to the names of Amos N. King and E. A. King, and said D. E. Budd was no longer recognized by said board of directors of said corporation as a stockholder therein.

"As conclusions of law, the court finds that the plaintiff is

entitled to recover from the defendants the sum of two hundred dollars, and costs and disbursements, and to have judgment for said sum."

On motion of the plaintiff, the court makes the following additional findings in this case, to wit: —

"1. The defendants in their proceedings to sell the stock of D. E. Budd for the payment of subscription and assessment levied thereon, caused notice of such sale to be published in the Sunday Mercury newspaper, as follows: It was inserted five times. The first insertion was on the twenty-ninth day of April, 1883, and the last was on the twenty-seventh day of May, 1883, and the sale was by said notice appointed and did in fact take place on the thirtieth day of May, 1883.

"2. At the time said notice was inserted and standing in said newspaper, the said newspaper was published and circulated as a weekly newspaper; was printed on Saturday of each week, but bore date of the Sunday following; was circulated to a limited extent on Saturday night of each week, but principally circulated on Sunday, running the same as its date. It did not receive nor publish the telegraph news, but had a large circulation, equal to that of any weekly newspaper published in Oregon, except the Oregonian. Its place of publication and where it was printed was in the city of Portland, Oregon."

On this appeal several questions of law have been discussed, which we will now consider.

1. *Assessment of stock.* It is claimed that the "call" or assessment of one hundred per centum on the stock of the defendant corporation was unlawful and unauthorized, for the reason that the resolution adopted by the directors does not show that it was made for any corporate purpose; nor does it show that any demand of the business of the company required that the subscriptions should be paid. This call appears to have been made by the board of directors of the defendant corporation, at which all were present, and there can be no question but what they had the power to make it. If the statute were entirely silent as to who should exercise the corporate power of making calls on stock, that power would devolve upon the directors

(Cook on Stock and Stockholders, § 109); but the statute contains ample provisions covering this subject. Section 3225 of Hill's Code provides: " . . . . From the first meeting of the directors, the powers vested in the corporation are exercised by them, or by their officers or agents, under their direction, except as otherwise provided in this chapter."

It is not provided in said chapter that this particular power is vested elsewhere; therefore there can be no question but what it is one of the "powers" which is to be exercised by the directors. And such, it is believed, is the effect of the intimation of this court in *Willamette F. Co.* v. *Stannus*, 4 Or. 261; nor is there anything in the other objections taken as to the form of the call. All that is really necessary is, that there should be some act or resolution which evinces or shows a clear official intent to render due and payable a part or all the unpaid subscription. (Cook on Stock and Stockholders, § 115.) So, also, the necessity of the call is not open to question by the stockholders. The determination of that question is for the board of directors. (*Chauteau Ins. Co.* v. *Floyd*, 74 Mo. 286; *Judah* v. *American L. S. Ins. Co.* 4 Ind. 333.)

2. *Sale for non-payment of assessment.* Counsel for the appellant have argued that the proceedings which were taken by the defendant corporation, upon the failure of Budd to pay the call upon his shares of stock, were entirely irregular and unauthorized by law, and in this we are inclined to think they are correct. A corporation has no inherent power to forfeit or sell the shares of stock owned by delinquent stockholders. That is not a common-law remedy, and can only be exercised when it is expressly conferred by some statute. (*Westacott* v. *Minnesota Mining Co.* 23 Mich. 145; Cook on Stock and Stockholders, § 123.) But it is claimed, on the other hand, that the statute has conferred the power exercised in this case, and counsel cite section 3221, subdivision 6, of Hill's Code. That section contains a particular enumeration of the powers conferred on all corporations organized under said act. By subdivision 6 they are empowered " to make by-laws not inconsistent with any existing law, for the sale of any portion of its stock for delinquent or unpaid assessments due

thereon, which sale may be made without judgment or execution; *provided,* that no such sale shall be made without thirty days' notice of time and place of sale, in some newspaper in circulation in the neighborhood of such company, for the transfer of its stock, for the management of its property, and for the general regulation of its affairs." This section confers the power, but it also prescribes the manner in which it shall be exercised. It must be by a "by-law not inconsistent with any existing law." In such a case, if the corporation determines to proceed by a sale of the stock for unpaid assessments instead of by action to recover the money, it must have such a by-law as the statute prescribes, and compliance with such by-laws must be made to affirmatively appear. But it is claimed that the corporation defendant enacted a by-law for this particular case, and that the same appears in finding number 5. That resolution is in no sense a by-law. It is directed especially-against the interests of a single stockholder. How many others may be delinquent does not appear; possibly none in this particular instance. But that does not affect the principle. If a majority of a board of directors of a private corporation may in any case pass such a resolution, and enforce it, they may do it in every case. The majority need not enforce the payment of calls, only in particular instances, to be designated by resolution.

As was said in *People* v. *Throop,* 2 Wend. 131: "The resolution entered by the directors is not entitled to the name of a by-law; it is a mere direction to the officers to exclude a director of the bank from the enjoyment of his rights. It is aimed at a single individual; not a general regulation, affecting the directors at large or the stockholders." I think that any by-law enacted under this section of the Code to be reasonable ought to be general; that is, it ought to affect every delinquent subscriber and all delinquent stock alike, and it ought not to be directed against the stock or interests of a particular stockholder. These are essential requisites to a valid by-law.

As was said in *Commrs.* v. *Gas Company,* 12 Pa. St. 318: "A by-law must be reasonable, and for the *common benefit;* it must not be in restraint of trade, nor ought it to impose a burden

without an apparent benefit." ( *Village of Buffalo* v. *Webster*, 10 Wend. 95; *Mayor of Hudson* v. *Thorne*, 7 Paige, 261; *Stokes* v. *City of New York*, 14 Wend. 87.)    So in *Goddard* v. *Merchants' Exchange*, 9 Mo. App. 290, it is said: "But by-laws must be certain, must be directed to all within the sphere of their operation, and must operate equally."    So, also, in the *People ex rel. Patrick Stewart* v. *The Young Men's Father Matthew T. A. B. Soc. No.* 1 *of Detroit*, 41 Mich. 67, it was said: "It is plain, however, that all corporation by-laws must stand on their own validity, and not on any dispensation granted to members.    They cannot be subjected to any conditions which do not *apply to all alike*, and cannot be compelled to receive, as matter of grace, anything which is a matter of right; neither, on the other hand, should there be personal exemptions of a general nature from any valid regulations that bind the mass of corporations."

The sale of the plaintiff's stock by virtue of the resolution set out in the fifth finding was clearly illegal, and without authority.

3. *Measure of damages.*    The measure of damages remains to be considered.    The appellant contends that if the sale was illegal, he is entitled to recover in this form of action the full amount bid for the stock, without any regard whatever to the fact that he had paid nothing for it.    In this class of cases, the authorities do not seem quite uniform as to the proper measure of damages in case of wrongful conversion.    Perhaps the better rule is, the value of the stock at the time of the conversion, or a reasonable time thereafter.    (Cook on Stock and Stockholders, § 581.)    But this general rule is subject to exceptions, one of which is, where the plaintiff has suffered only a technical conversion, without any actual pecuniary loss, only nominal damages can be recovered.    (§ 586, *supra.*)    And the general rule in assessing damages is compensation; that is, that the plaintiff shall recover such sum as will compensate him for the injury he has suffered by the wrong of the defendant.

In this case these shares were encumbered by an assessment equal to their par value; that is, the purchase price of those shares for which the plaintiff was indebted to the defendant cor-poration.    That sum must, in any event, be paid to the defend-

Points decided.

ant if the shares would bring it upon the market.  The findings show that they did bring that sum, and two hundred dollars more, and that of the proceeds of the sale ten thousand dollars were applied in satisfaction of plaintiff's debt to the defendant corporation.  What effect these proceedings had upon the plaintiff's right to the stock in question we cannot now consider, because the question is not involved here.

All that we now decide is, that under these findings the sale of the plaintiff's stock was irregular and unauthorized, and that the court below did not err as to the measure of damages under the peculiar facts of this case.  Whether the prosecution of this action to final judgment by the plaintiff is to be regarded as an election on his part to claim the money rather than the stock, and thereby ratify and affirm the irregular proceedings taken against him (*Morrison* v. *Crawford*, 7 Or. 472), or whether actual payment of the judgment is necessary to divest his title to the shares, we do not now consider or decide.

Let the judgment of the court below be affirmed.

THAYER, J., concurred.