## McDUFFY, EDWARDS & ASSOCIATES, INC.,
### *Respondent,*

*v.*

## PERIPHERAL SYSTEMS, INC.,
### *Appellant.*

### (A8601-00032; CA A44201)

762 P2d 299

Andrew R. Gardner, Portland, argued the cause for appellant. With him on the briefs were Charles F. Adams, and Stoel Rives Boley Jones & Grey, Portland.

Dean M. Richardson, Portland, argued the cause for respondent. With him on the brief were Lois I. Beran, and John H. Draneas & Assoc., P.C., Portland.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals from a judgment holding that it breached a contract with plaintiff by failing to pay plaintiff's fee. We affirm.

In September, 1985, defendant, a corporation engaged in product development and testing, contracted with plaintiff, an employment agency, to recruit a vice-president for its sales and marketing division at a salary of $60,000 to $65,000. Under the terms of the contract, plaintiff agreed to recruit and investigate the background of all applicants. If defendant were to hire a recruited applicant, it agreed to pay a finder's fee of 35 percent of the employe's annual compensation, or approximately $22,750, within 15 days from the date of plaintiff's invoice. For over two months, defendant employed an applicant recruited by plaintiff; the employe then resigned. Defendant contends that the employe resigned after a confrontation between its president and him in which the employe discovered corporate violations of Securities and Exchange Commission requirements and allegedly demanded $20,000 in return for his silence. After his resignation, the chairman of the board of Dai-E Systems, the employe's former employer, contacted defendant's president and disclosed that the employe had been "terminated for cause" for alleged conflicts of interest.

Plaintiff brought this action after defendant repeatedly failed or refused to pay the fee. Defendant denied liability and alleged, among other things, a counterclaim for $18,885.65, its expenses incurred by hiring the employe, on the ground that plaintiff had breached the contract by failing to do an adequate background investigation. Defendant also learned during discovery that another former employer had also terminated the employe.

Defendant presented evidence that the employe had notified plaintiff's president that he had been terminated by Dai-E as a result of a disagreement with the board of directors but that plaintiff never attempted to contact the management or the board members of Dai-E to verify that. Plaintiff's president testified that he did not contact Dai-E, because it was no longer in business, that he did not learn of the employe's

termination for cause until after his resignation from defendant and that the investigation into the employe's employment history and competency was sufficient under the contract. The jury returned a verdict in favor of plaintiff, awarding damages of $22,750.

Defendant first argues that it was prejudiced by the jury instructions, which incorporated a purportedly irrelevant warranty provision from the contract, and the court's refusal to give an instruction explaining the provision. The provision states:

> "Provided payment is received within 15 days from the date of the invoice, McDuffy-Edwards warrants placements to the extent if, for any reason, the employee leaves the position secured through McDuffy-Edwards within 60 days of the starting date, McDuffy-Edwards will provide a qualified replacement or future placements of equal fee value."

Defendant contends that the instruction confused and misled the jury by giving that provision undue emphasis. Because it was singled out as the only term of the parties' contract quoted in the instructions, defendant asserts, the jury could have concluded that defendant could be liable to pay plaintiff's fee even if plaintiff's background check was inadequate, because it had not paid plaintiff within 15 days of the invoice date and the employe was employed longer than 60 days. Plaintiff agrees that the provision was irrelevant to the issues in the case but contends that defendant was not prejudiced by its being quoted.

Although it is improper for instructions to single out a particular thing in a way that would tend to create in the minds of the jurors a false impression of its importance, *Lee v. Hoff,* 163 Or 374, 388, 97 P2d 715 (1940), instructions must be construed in their entirety. *State v. Stark,* 7 Or App 145, 149, 490 P2d 511 (1971). It is not decisive that one instruction is erroneous "if from the instructions as a whole the jury [was] correctly charged as to the law in its application to the facts." *Klebaum v. Mitchell,* 246 Or 196, 198, 424 P2d 219 (1967), *quoting Parmentier v. Ransom,* 179 Or 17, 24, 169 P2d 883 (1946).

Immediately after reading the warranty provision, the court instructed the jury that defendant denied plaintiff's allegation that plaintiff had performed an investigation into

the employe's background, that defendant's duty to pay would be excused by plaintiff's material breach of contract and that plaintiff had the burden to prove that it had performed its promises under the contract. In another instruction the court also explained that defendant would be entitled to damages if plaintiff had breached the contract by failing to investigate the employe's background. Under the instructions as a whole, it is highly unlikely that the jury would have been misled. *See Lochard v. Vosika,* 267 Or 213, 220, 515 P2d 1320 (1973).[1]

Defendant next argues that the verdict form improperly precluded the jury from considering its counterclaim for breach of contract. The verdict form provides:

"1.   Did Plaintiff materially perform all its promises under the agreement with Defendant?

"Yes ___ or No ___.

"IF YOUR ANSWER IS 'YES', THEN YOUR VERDICT IS FOR PLAINTIFF AND YOU DO NOT NEED TO ADDRESS QUESTIONS 2 and 3. THE COURT WILL DETERMINE THE AMOUNT OF DAMAGES. THE FOREMAN SHOULD SIGN THE VERDICT FORM.

"IF YOUR ANSWER IS 'NO', THEN PROCEED TO QUESTION 2.

"2.   Did Plaintiff materially breach its agreement with Defendant in the manner claimed by Defendant?

"Yes ___ or No ___.

"IF YOUR ANSWER IS 'NO', THEN DO NOT ANSWER QUESTION 3.

"IF YOUR ANSWER IS 'YES', THEN PROCEED TO QUESTION 3.

"3.   What, if any, were Defendant's damages?

"$_____."

It is the word "materially" that defendant points to as creating the error.

---

[1] Defendant also argues that, because the warranty provision was irrelevant, its inclusion in the instructions improperly presented to the jury an issue outside the scope of the pleadings. We need not determine whether the inclusion without an instruction on the provision's legal effect or probative value created an "issue." Even if it did, we believe it highly unlikely that the jury was "misled to the injury of the complaining party." *Godvig v. Lopez,* 185 Or 301, 310, 202 P2d 935 (1949), *quoting Salmon v. Olds & King,* 9 Or 488, 491 (1881).

Defendant argues that the jury could have awarded both parties damages, to plaintiff on its fee claim and to defendant for plaintiff's breach of contract, if plaintiff's breach were "immaterial," rather than "material." Defendant contends that plaintiff promised to provide two services: a search for viable candidates and an investigation of the background of candidates. It contends, therefore, that the jury could have found that plaintiff committed an *immaterial* breach by performing the search but failing to investigate. In response to its argument at trial, the judge stated: "I don't think [the jury] can come back with a yes on both."

■ The court, in essence, ruled as a matter of law that plaintiff's alleged failure to investigate, if proved, could only have been a material breach.[2] Generally, the issue of whether a breach is material or immaterial is a question of fact for the jury. *Wasserburger v. Amer. Sci. Chem.,* 267 Or 77, 82, 514 P2d 1097 (1973). In this case, however, the uncontested evidence is consistent only with the idea of material breach.

We have held that "[a] breach is material if it goes to the very substance of the contract and defeats the object of the parties entering into the contract." *Bisio v. Madenwald,* 33 Or App 325, 331, 576 P2d 801, *rev den* 283 Or 1 (1978). That determination involves consideration of the extent to which the injured party will obtain the substantial benefit which it reasonably could have anticipated, the extent to which the injured party may be adequately compensated in damages for lack of performance and the wilful, negligent or innocent character of the behavior of the party which failed to perform. *Wasserburger v. Amer. Sci. Chem., supra,* 267 Or at 82; *see Restatement of Contracts,* § 275 (1932); *see also Bisio v. Madenwald, supra,* 33 Or App at 331.

■ Defendant presented evidence that it would not have hired the employe if plaintiff had discovered and disclosed his employment history, that the employe was of no value to defendant and that it refused to pay the finder's fee because of plaintiff's failure to investigate. It did not put on evidence of

---

[2] Defendant also contends that the court erred in not submitting the issue of whether plaintiff's breach was material or immaterial to the jury. Our answer to the issue raised by the verdict form also answers that argument.

damages other than its whole claim for the breach, but contends that its damages for the supposed *immaterial* breach were the same as for a *material* breach: the entire salary and benefits paid the employe.

Plaintiff's failure to investigate could only have been a material breach. Defendant appears to argue that the search, and not the investigation, was the "object" of the contract. That argument is not supported by defendant's evidence. Defendant did not present evidence that it would have hired the employe without an investigation but, to the contrary, introduced evidence that it would not have hired the employe if the investigation had revealed his employment record. Also, it presented evidence that the employe was of *no* value to the company, and it introduced no evidence of damages for a partial breach. Its evidence was consistent only with the theory that plaintiff's failure to investigate, if proved, defeated the "substantial benefit" or "object" which it anticipated. The court did not err with respect to the verdict form.[3]

■ Defendant also argues that the limitation on employment agency fees in ORS 658.185(2)(c) applies to employer-paid fees and that the trial court erred in striking its affirmative defense and in denying its motion for a directed verdict, both based on that statute, which provides:

> "Notwithstanding the other provisions of this section, in no instance in which the employment secured is subsequently terminated shall the charge for services by an employment agency be greater than the total gross earnings of the individual."

Although defendant acknowledges that all of the other subsections of ORS 658.185 apply exclusively to employe-paid fees, it argues that the terms "notwithstanding the other provisions of this section" and "in no instance" in subsection (2)(c) clearly and unambiguously establish the intent to apply the fee limitations to employer-paid fees, as well. As to the effect of the alleged violation, defendant first contends that the contract is void and, therefore, unenforceable, because it violates the statute by setting a fee of $22,750,

---

[3] We find no merit in plaintiff's argument that defendant's counterclaim for an immaterial breach is legally insufficient because it failed to plead and prove substantial performance of its obligation to pay the finder's fee. Defendant was not required to plead and prove substantial performance by payment.

which exceeds $13,750, the employe's total gross earnings before he resigned. It argues alternatively that, if the contract is not void, plaintiff's damages should be reduced to $13,750, the maximum allowed by the statute. We hold that the limitation does not apply to employer-paid fees.

Subsection (2)(c) does not expressly state that employer-paid fees are subject to the gross earnings limitation. There is nothing in any administrative rule or the legislative history that evidences an intent to subject employer-paid fees to the limitation. Moreover, the logic of the language of subsection (2)(c), placed as it is in a statute in which all of the other subsections address fees paid by employes, supports the conclusion that the provision was intended to apply only to employe-paid fees. We construe the terms "notwithstanding the other provisions of the section" and "in no instance" as indicating an expansion of the protections given *employes* in the other subsections. The subsection complements subsection 2(a) by providing greater protection to temporary employes earning higher salaries. The subsection also complements subsection 2(b)[4] by protecting permanent employes. Defendant offers no explanation for why the legislature would choose to place a provision to protect *employers* in a section of the act that otherwise exclusively protects *employes,* or how the purposes of the act would be furthered by protecting employers.[5]

Affirmed.

---

[4] Those subsections read:

"(2)(a) If an individual is employed in temporary employment through the services of an employment agency, the charge for services paid by the individual shall not exceed one-ninetieth of the charge for permanent employment for each consecutive calendar day during the period the individual is employed or compensated as though employed.

"(b) If an individual leaves employment within 90 days after the starting date of employment, the employment agency shall reduce the charge for services payable by the individual to that payable for temporary employment under paragraph (a) of this subsection and shall refund any charge paid in excess of that amount."

[5] Defendant's final assignment of error is without merit.