Argued and submitted May 25, affirmed October 17, reconsideration denied December 19, 1990, petition for review allowed February 5, 1991 (311 Or 150)

Sally McKEON,
*Respondent,*

*v.*

Homer G. WILLIAMS,
Front and Taylor Investments
and Charles G. Rolles,
*Appellants,*

*and*

David G. ALDERMAN,
*Defendant.*

(88-06-03272; CA A61358)

799 P2d 198

Diane L. Wendlandt, Portland, argued the cause for appellant. With her on the briefs were Jacob Tanzer and Ball, Janik & Novack, Portland.

Monica M. O'Brien, Portland, argued the cause for respondent. With her on the brief was Gleason, Scarborough, McNeese, O'Brien & Barnes, P.C., Portland.

EDMONDS, J.

De Muniz, J., dissenting.

## EDMONDS, J.

Defendants appeal from a judgment in favor of plaintiff for damages for breach of a lease. Defendants also assign error to the trial court's instruction regarding the measure of damages applicable to defendants' counterclaim for conversion. We affirm.

Plaintiff is the owner of a commercial building that was leased by defendants for a 20 year term. In February, 1988, the 13th year of the lease, defendants stopped paying monthly rent. At the same time, they began negotiating an assignment of the lease to First Western Resource Company. In addition, First Western offered to purchase defendants' restaurant equipment located in plaintiff's building. The proposal was forwarded to plaintiff in April, 1988.

In June, 1988, plaintiff informed defendants that no assignment of the lease would be considered until all past due rent was paid and filed a legal action seeking only payment of the back rent. In August, 1988, plaintiff informed defendants that, before an assignment of the lease could be considered, the rent would have to be brought current and defendants would need to provide plaintiff with financial information about the proposed assignee. Defendants failed to bring the rent current and did not provide plaintiff with the requested financial information. On August 31, 1988, plaintiff notified defendants that the lease was terminated.

Defendants began negotiating with CPG Enterprises and forwarded a proposed sublease to plaintiff in October, 1988. Thereafter, plaintiff and CPG began direct negotiations. Because defendants refused to give up possession of the building, plaintiff filed a separate FED action. On the day set for trial, defendants agreed to turn over possession of the premises as of November 30, 1988, and stipulated to a judgment of restitution requiring them to remove the restaurant equipment from the premises by December 31, 1988. Defendants did not remove the equipment by December 31, 1988, and subsequently requested permission to remove the equipment in early January, 1989. Plaintiff denied defendants' request and retained possession of the equipment. In June, 1989, she entered into a lease with CPG for the premises and defendants' equipment.

Also, in January, 1989, plaintiff amended her complaint that had sought only payment of back rent to allege termination of the lease and damages for future rent as well. Defendants counterclaimed for damages for breach of lease and for conversion of the restaurant equipment that plaintiff refused to allow defendants to remove from the building. A jury awarded damages to plaintiff on her breach of lease claim and to defendants on their conversion claim. Defendants contend that the trial court erred in directing a verdict for plaintiff on defendants' breach of lease counterclaim, as well as in improperly instructing the jury on the measure of damages for conversion.

In directing a verdict in favor of plaintiff on defendants' counterclaim for breach of lease, the trial court reasoned that defendants' failure to pay rent was a material breach as a matter of law. Defendants contend that the materiality of their breach was a jury question. Second, they argue that, even if their failure to pay rent was a material breach, plaintiff still had a duty to consent to an assignment to First Western Resource Company. Therefore, they argue that their counterclaim for plaintiff's alleged breach of the assignment provision of the lease should have been submitted to the jury.

Generally, whether a breach is material is a question of fact to be decided by the jury, unless the facts are undisputed; then it is a question of law for the court. *De Vol v. Citizens' Bank,* 113 Or 595, 602, 233 P 1008 (1925); *McDuffy, Edwards & Assoc. v. Peripheral Systems,* 93 Or App 226, 231, 762 P2d 299 (1988). A breach is material if it goes to the very substance of the contract and defeats the object of the parties in entering into the contract. *Bisio v. Madenwald,* 33 Or App 325, 331, 576 P2d 801, *rev den* 283 Or 1 (1978). In determining whether a breach is material, these factors are to be considered: (1) the extent to which the injured party will obtain the substantial benefit which he reasonably could have anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of performance; and (3) the wilful, negligent or innocent behavior of the party failing to perform. 33 Or App at 331.

We hold that, under the terms of the parties' lease, failure to pay rent could be nothing other than a material breach. Even though defendants had paid rent for a lengthy

period and had attempted to find a suitable assignee of the lease, nonpayment of the rent substantially undermined the basis for the parties' lease agreement. *See Goode v. Duke,* 131 Or 488, 500, 283 P 34 (1929).[1] The trial court was correct in directing a verdict for plaintiff on the issue.

■　　　The trial judge concluded that, because defendants had materially breached the lease when they failed to pay rent in February 1988, plaintiff had no further obligation under the lease. The trial court was wrong. Plaintiff did not terminate the lease until August 31, 1988. The June, 1988, action was for past due rent only. Between February and August 31, 1988, her obligations to defendants under the lease continued. *See Hollin v. Libby, McNeill & Libby,* 253 Or 8, 452 P2d 555 (1969); *Krebs Hop Co. v. Livesley,* 59 Or 574, 114 P 944, 118 P 165 (1911).

■　　　However, the trial court's granting of plaintiff's motion for a directed verdict was not error for a different reason. *See Bush v. Greyhound Lines, Inc.,* 295 Or 619, 623, 669 P2d 324 (1983). The lease agreement provided:

> "11.01　No part of the leased property may be assigned, mortgaged or subleased without the prior written consent of Landlord. This provision shall apply to all transfers by operation of law and transfers to and by trustees in bankruptcy, receivers, administrators, executors and legatees. No consent in one instance shall prevent the provision from applying to a subsequent instance. *The Landlord shall consent to a transaction covered by this provision when withholding such consent would be unreasonable in the circumstances.*" (Emphasis supplied.)

Under the facts of this case, plaintiff could not, under any theory, be deemed to be unreasonable in requiring information about the proposed assignee's financial responsibility before consenting to an assignment. Because defendants did

---

[1] ORS 91.090, which applies to commercial leases, *see Wash. Squ. v. First Lady Beauty Salons,* 290 Or 753, 625 P2d 1311 (1981), provides in part:

"The failure of a tenant to pay the rent reserved by the terms of the lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate the tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful[.]"

not provide the requested information, plaintiff did not unreasonably refuse to consent to the assignment of the lease to First Western.[2]

Finally, defendants contend that the trial court improperly instructed the jury that the measure of damages on their conversion claim was the value of the equipment *after its removal* from plaintiff's premises. The trial court instructed the jury:

> "The measure of damages is the fair market value of the property after removal from plaintiff's premises. Fair market value is that amount of money that the property would bring in the open market if there was a willing seller and a willing buyer."

Defendants excepted, because the court did not instruct the jury that the measure of damages is "the fair market value of the property under the circumstances *then and there existing.*" They argue that the court's instruction resulted in plaintiff's obtaining the equipment at a cost of $5,170, although it would have cost plaintiff much more to replace the equipment.

■    The general rule is that the market value of the goods at the time and place of the conversion is the proper measure of damages, and there is a split of authority as to whether the measure to be applied in a case like this is the market value of the property "in place" or in a "removed state." *See Atlas Hotel Supply v. Baney,* 273 Or 731, 742, 543 P2d 289 (1975). In *Atlas,* the defendant appealed from an award of damages by a court sitting without a jury. The Supreme Court disregarded the trial court's informal "memorandum opinion" in which it said that the "on the curb" measure of damages was "unfair," because the opinion had no legal efficacy. 273 Or at 743 n 4. It noted that an award of damages by a trial court sitting without a jury must be affirmed, if it is supported by any substantial evidence. Thus, it held that, because there was evidence to support the amount awarded on either "in place" or a "removed state" value, it was not necessary to decide which measure was correct.

In contrast, the error assigned in this case involves a

---

[2] Defendants do not claim that plaintiff breached a duty to consider the proposed assignment to CPG.

jury instruction. We must decide whether "in place" or "removed state" value is the correct measure of damages. Defendants contend that *Blake-McFall Co. v. Wilson,* 98 Or 626, 193 P 902 (1921), controls. In that case, however, the plaintiff-tenant had a leasehold interest at the time of the conversion. The court specifically pointed out that "the tenant's possession [of the premises], actually and rightfully, has been continuous and without interruption * * *." 98 Or at 647. Defendants argue that whether the tenant had a leasehold interest at the time of the conversion is not determinative. We disagree.

In analyzing a similar issue, the court in *I. Tanenbaum Son & Co. v. C. Ludwig Baumann & Co.,* 261 NY 85, 184 NE 503 (1933), said:

> "If any person had wrongfully taken the chattels from the premises while the contract was still in force, the wrongdoer would have interfered, not only with the plaintiff's right to remove the chattels at the termination of the lease, but also with the plaintiff's right to enjoy the benefit of the chattels while affixed to the real estate. For damages caused to the plaintiff by such wrong, the plaintiff would have a right of action against the wrongdoer. The measure of damages would then have been the value of the chattels at the time when affixed to the real property. Those damages could not be measured by the market price which could be obtained for the chattels in a dismembered state when removed from the real property, for such measure would represent merely the gain of the defendant caused by its wrongdoing and not the loss of the plaintiff. The plaintiff's loss could be measured only by the value of the chattels in the place where the plaintiff had a right to maintain them and from which they were removed.

> "* * * That rule has no application in this case.

> "It has no application because the defendant's wrong consisted, not in severing and removing chattels from the place where they were affixed, but merely in refusing to allow the plaintiff to take possession of the property for the purpose of removal. For that purpose they must be severed by the plaintiff from the realty. * * * '[W]hen the property so in place can no longer be there used by the owner and he is subject to summary removal its value will be estimated in case of conversion with reference to these facts; it will be estimated with reference to ... the obligation or necessity of removal.' 4 Sutherland on Damages (4th Ed.), § 1114." 261 NY at 89.

■ The general concept of compensatory damages is intended to put an injured party in the position that he would have been had the tort not occurred. *Budd v. Multnomah St. Ry. Co.,* 15 Or 413, 419, 15 P 659 (1887). Had plaintiff granted defendants' request to have access to plaintiff's property in order to remove their equipment, defendants would have obtained only the value of the equipment in its removed state and nothing more. Defendants' right to use the equipment in place was only valid while the lease was in force. A third party purchasing the equipment from defendants without an effective lease would only have a right to the equipment as severed and would not have a right to the equipment as attached to the realty. We hold that, under these circumstances, the measure of defendants' damages is its value severed from the real property and that the trial court did not err in its instruction to the jury.

Affirmed.

**DE MUNIZ, J.,** dissenting.

The majority concludes that, after the FED, defendants only had a right to the property in its removed state and, therefore, the court's instruction limiting defendants' damages in that fashion was correct. The majority's analysis permits plaintiff to profit unfairly from her wrongful act and I, therefore, dissent.

Generally, the measure of damages in an action for conversion is the fair market value of the property at the time and place of conversion. *Hall v. Work,* 223 Or 347, 357, 354 P2d 837 (1960). There has been much debate and uncertainty in conversion cases about whether the measure of damages is the fair market value of the property "in place" or "in a removed state." The Supreme Court has indicated, however, that in determining the proper measure of damages in conversion cases, it may be necessary, in order to prohibit a wrongdoer from profiting from the wrongful act, to consider what might be right for the injured party to receive, *as well as what is just for the other party to pay. See Atlas Hotel Supply v. Baney,* 273 Or 731, 741-42, 543 P2d 289 (1975). This is such a case.

In restricting defendants' damages to the value of the equipment as if had been removed, the majority focuses only

on the *nature* of defendants' right in the equipment. Had plaintiff actually severed the equipment from the building, the majority's analysis might be correct. However, that is not what happened. Instead, plaintiff converted the property by retaining it in place and subsequently leasing it in place to another tenant. After plaintiff's conversion of the equipment, the nature of defendants' right in the equipment was simply one fact for the jury to consider in determining fair market value.

There is evidence that the equipment plaintiff converted had a much greater value in place than if removed.[1] Plaintiff was part of the market of potential purchasers of the equipment *in place* at the time when she converted the equipment. Restricting the measure of damages to the value of the equipment as if removed allows plaintiff the potential to profit from her wrongful act. On the other hand, a jury instruction in accordance with the general rule of fair market value at the time and place of conversion would have permitted the jury to determine whether the fair market value was the in place value that defendant contended plaintiff had taken advantage of, or the value as if removed as plaintiff contended.

I would hold that the instruction given by the trial court limiting defendants' damages to the value of the equipment as if removed was erroneous and that defendants are entitled to a new trial on their damages for plaintiff's conversion of the equipment.

Joseph, C. J., and Richardson and Riggs, JJ., join in this dissent.

---

[1] Plaintiff's expert, who valued the equipment "in a removed state" at $5,100, also testified that the cost of purchasing and installing new equipment was $125,000. In June, 1988, First Western had offered, in connection with the proposed lease assignment, to pay defendants $72,500 for the equipment.