COALVILLE CITY, Plaintiff, Appellee, and Cross-Appellant,

v.

Alvin R. LUNDGREN dba Lundgren Outdoor Advertising, et al., Defendant, Appellant, and Cross-Appellee.

No. 960434–CA.

Court of Appeals of Utah.

Jan. 9, 1997.

Rehearing Denied Feb. 20, 1997.

John Walsh and Alvin R. Lundgren, Salt Lake City, for Defendant, Appellant, and Cross-appellee.

Grant Macfarlane, Jr., Kira E. Macfarlane, and James L. Barker, Park City, for Plaintiff, Appellee, and Cross-appellant.

Before BENCH, GREENWOOD, and ORME, JJ.

BENCH, Judge:

Defendant Alvin R. Lundgren appeals the trial court's decision upholding the parties' Stipulation, denying rescission, and awarding attorney fees against defendant pursuant to Utah Code Ann. § 78–27–56 (1996). Coalville cross-appeals the trial court's award of prejudgment interest on a judgment to defendant for Coalville's nonmaterial breach of the Stipulation. We affirm.

## BACKGROUND

Defendant owns and operates an outdoor sign advertising business. In 1981, defendant paid Coalville $144 for nine outdoor advertising sign licenses or permits along Interstate 80. Defendant then erected the signs and leased sign space. At the time, the applicable city ordinance required permission from the city council or its delegated representative to erect or construct an advertising sign in Coalville. In 1982, Coalville filed a complaint alleging that defendant had not obtained the proper permits to build and operate the signs and had failed to comply with the particulars of the city ordinance.

In early 1983, the parties stipulated to a settlement and dismissal of that lawsuit. The Stipulation provided a schedule to phase-out all nine of defendant's signs. The Stipulation first required Coalville to issue defendant proper sign permits for the existing signs. These permits were then to expire over the ensuing eighteen years: one each at the end of 1985, 1987, 1989, 1991, 1993, 1995, 1997, and two at the end of 2001. Defendant agreed to remove the signs on or before the designated expiration date. The Stipulation also provided that "*if* [Coalville] issues sign

permits in the future, the Defendant, by virtue of its existing signs, will have a priority ... and the Plaintiff agrees to take whatever steps are necessary to insure that this priority for existing signs is made a part of the published sign policy of [Coalville]." (Emphasis added.) Subsequent to the Stipulation, Coalville amended its ordinance to prohibit all off-premise signs, and hence no sign policy has ever been published.

In addition to resolving the matters raised in the lawsuit, the Stipulation stated that defendant would provide a bid and information to Coalville enabling Coalville to decide whether to lease or purchase a sign from defendant. Within sixty days of Coalville's decision to lease or purchase, defendant would provide a sign face. Coalville's sign was then to be erected at any one of defendant's nine sign locations, with the provision that defendant would move Coalville's sign face to Coalville's preferred location when it became available. The trial court found that defendant did not provide Coalville with the cost information contemplated by the Stipulation. Nonetheless, Coalville made the decision to purchase a sign as reflected in the minutes of the city council meeting dated March 24, 1983. Coalville did not communicate its decision to defendant, and later claimed this provision of the Stipulation was satisfied by the purchase of a sign by the Coalville Chamber of Commerce.

Defendant did not remove a sign at the end of 1985 as required by the Stipulation, and Coalville filed an Order to Show Cause to force defendant's compliance. Defendant claimed the Stipulation was unenforceable because he had revoked his acceptance, or alternatively, because Coalville failed to comply by leasing or purchasing a sign. The trial court ruled that the Stipulation was "binding upon the parties" and ordered defendant to remove a sign. Defendant's Motion to Alter or Amend the order was denied, and defendant appealed to the Utah Supreme Court. The supreme court granted Coalville's Motion for Summary Affirmance, stating "[t]he issues raised by appellant are so unsubstantial as not to merit further proceedings and consideration of this court."

*Coalville City v. All Assocs., Inc.*, No. 860529 (Utah Feb. 25, 1987).

Despite the previous court orders, defendant again failed to timely remove a sign at the end of 1987, and Coalville filed another Order to Show Cause to enforce the Stipulation. The trial court ordered defendant "forthwith" to remove one advertising sign that was supposed to be removed in 1987, and to timely remove a sign slated to be removed in 1989, of defendant's own choice, as long as it was not the Chamber of Commerce sign. Thereafter, defendant removed the Chamber of Commerce sign, in violation of the court's order, claiming that Coalville had admitted it had no interest in the sign.

In subsequent years, numerous motions and petitions were made to the trial court by both sides. In December of 1994, defendant asked the trial court to enforce the Stipulation and order Coalville to pay defendant for the lost income for the sign that was to be purchased by Coalville. Alternatively, defendant requested that the court declare the Stipulation unenforceable (an issue already resolved by the trial court and summarily affirmed by the supreme court), reissue the sign permits, and pay costs to reinstall the signs already removed. Both parties filed motions and supporting memoranda for summary judgment. Both motions were denied, and a bench trial was scheduled to address "all pending petitions, motions, Orders to Show Cause and other pleadings" that had accumulated over the years.

At trial, the court found that defendant did not remove any of the signs within the time required by the Stipulation, and legal action was required to force removal of the signs in 1985, 1987, 1989, and 1993. The trial court ordered defendant to pay Coalville's attorney fees in the amount of $3,542, incurred in obtaining the contempt order when defendant disobeyed the court order that he not remove the Chamber of Commerce sign.

Throughout the years of this dispute, defendant maintained that the Stipulation was unenforceable or that rescission of the entire Stipulation was warranted because Coalville did not lease or purchase a sign from him and he was therefore excused from removing his signs. Coalville responded by arguing

that the Chamber of Commerce purchased a sign from defendant, thereby satisfying that provision of the Stipulation. The trial court determined that the Chamber of Commerce sign did not satisfy Coalville's obligation because Coalville and the Chamber of Commerce are different entities. The trial court found, however, that Coalville's failure to lease or purchase one of defendant's signs was not a material breach of the Stipulation. The court determined that Coalville's breach warranted damages of $3,890 at 10% per annum from January 1, 1985, but did not justify rescission because the breach was not material to the overall purpose of the Stipulation and defendant could be made whole by an award of damages.

In rejecting defendant's argument for rescission, the trial court cited several additional bases. The trial court held that defendant was not before the court with clean hands because "he has repeatedly violated the terms of the Stipulation and is in contempt of Court for willful disobedience of a direct order of the Court in these proceedings." Further, defendant was determined not to be entitled to rescission because he failed to give timely notice thereof and tender return of consideration received. Finally, the court held, "it is impossible to restore the parties to the position they were in prior to entering into the Stipulation, the Defendant having maintained the advertising signs pursuant to the Stipulation for a period of approximately 12 years."

The trial court ordered defendant to abide by the removal schedule for the remaining signs. The court found that defendant's claims and defenses in response to Coalville's enforcement of the Stipulation were without merit and not asserted in good faith pursuant to Utah Code Ann. § 78–27–56 (1996), and ordered defendant to pay Coalville's attorney fees in the amount of $16,843.[1] Also, in response to defendant's bad faith allegations against Coalville, the trial court concluded that no further order need be made regarding publication of defendant's priority right because such signs are illegal under Coal-

ville's present zoning ordinance and there was nothing in the Stipulation prohibiting Coalville from changing the ordinance. Defendant's Motion to Alter or Amend the trial court's judgment was denied, and this appeal followed.

## ANALYSIS

### I. Coalville's Breach

Defendant argues that Coalville materially breached the Stipulation by not purchasing or leasing a sign, which entitled defendant to rescission of the Stipulation and monetary damages, and excused defendant from having to remove the signs as agreed in the Stipulation.

■ A stipulation is construed as a contract. *Deseret Sav. Bank v. Walker*, 78 Utah 241, 251, 2 P.2d 609, 614 (1931). "The law is well settled that a material breach by one party to a contract excuses further performance by the non-breaching party." *Holbrook v. Master Protection Corp.*, 883 P.2d 295, 301 (Utah App.1994). What constitutes a material breach is a question of fact. *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 458 (Utah App.1994) ("Whether a party has materially breached a lease is generally a question of fact for the fact finder."), *cert. denied*, 899 P.2d 1231 (Utah 1995); *accord McKeon v. Williams*, 104 Or.App. 106, 799 P.2d 198, 200 (1990) ("Generally, whether a breach is material is a question of fact to be decided by the jury, unless the facts are undisputed; then it is a question of law for the court."), *aff'd*, 312 Or. 322, 822 P.2d 699 (1991).

To overturn a trial court's finding of fact, "an appellant must first marshal all the evidence supporting the findings and then demonstrate that, even if viewed in the light most favorable to the trial court, the evidence is legally insufficient to support the findings." *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989). Findings of fact will not be set aside unless they are against the clear weight of the evidence and clearly erroneous with due consideration given to the trial court to judge

---

1. The $16,843 does not include fees incurred to procure the contempt order against defendant, nor does it include fees incurred in defending defendant's claim for damages resulting from Coalville's failure to lease or purchase a sign.

the credibility of witnesses. Utah R. Civ. P. 52(a); *Robb v. Anderton,* 863 P.2d 1322, 1327–28 (Utah App.1993).

Defining a material breach necessary to justify rescission, the Utah Supreme Court has held:

As a general proposition, a party to a contract has a right of rescission and an action for restitution as an alternative to an action for damages where there has been a *material* breach of the contract by the other party. What constitutes so serious a breach as to justify rescission is not easily reduced to precise statement, but certainly a failure of performance which "defeats the very object of the contract" or "[is] of such prime importance that the contract would not have been made if default in that particular had been contemplated" is a material failure.

*Polyglycoat Corp. v. Holcomb,* 591 P.2d 449, 451 (Utah 1979) (footnotes omitted) (alteration in original).

Similarly, in *Cady v. Burton,* 257 Mont. 529, 851 P.2d 1047, 1052 (1993), the Montana Supreme Court held there was no material breach and therefore no rescission warranted when the seller in a real estate transaction spent the buyer's earnest money deposit prior to closing. The *Cady* court defined a breach necessary for rescission as follows:

A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement.

*Id.* 851 P.2d at 1053 (citation omitted).

■ In the case at bar, the Stipulation settled Coalville's lawsuit against defendant for failing to comply with Coalville's outdoor advertising sign ordinance. The lawsuit was devoid of any mention or arrangement for a sign for Coalville. The provision that Coalville purchase a sign from defendant arose subsequent to the lawsuit and is secondary and collateral to the issues raised in the lawsuit—that of phasing out defendant's signs. Although not uncontradicted, there was testimony at trial from Mayor Johnson that it was his idea to obtain a sign to promote Coalville rather than a term originating with defendant and required as a condition of settlement. Removing the signs over eighteen years was the purpose and object of the Stipulation and settlement. We therefore cannot say that the trial court's decision finding Coalville's breach nonmaterial was clearly erroneous and against the clear weight of the evidence.

Furthermore, as indicated by the trial court, the equitable remedy of rescission is inappropriate when a legal remedy such as damages is adequate. *Erisman v. Overman,* 11 Utah 2d 258, 262–63, 358 P.2d 85, 88 (1961). Also, " ' "[t]he rule is that he who would rescind the contract must offer to do so promptly on discovering the facts that will justify a rescission, and while he is able of himself, or by the judgment of the court, to place the opposite party substantially in statu[s] quo." ' " *Frailey v. McGarry,* 116 Utah 504, 513, 211 P.2d 840, 845 (1949). In the instant case, rescission of the entire Stipulation would be inappropriate because damages were sufficient to compensate defendant for Coalville's nonmaterial breach. A return to the status quo, as it existed prior to the Stipulation, was impossible because defendant had enjoyed the benefit of operating his signs for several years.

Finally, we agree with the trial court's conclusion that rescission in this case would be inappropriate in light of defendant's pattern of consistent disobedience to court orders. Rescission is an equitable remedy and " ' "[h]e who comes into a court of equity must come with clean hands." ' " *Salt Lake County v. Kartchner,* 552 P.2d 136, 139 (Utah 1976). In requesting an equitable remedy, defendant did not come to the court with "clean hands."

## II. Attorney Fees

Defendant asserts that the trial court erred in awarding $16,843 in attorney fees to

Coalville for defendant's conduct from September 6, 1989, through August 16, 1995, pursuant to Utah Code Ann. § 78–27–56 (1996). That statute provides as follows:

(1) In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith, except under Subsection (2).

(2) The court, in its discretion, may award no fees or limited fees against a party under Subsection (1), but only if the court:

(a) finds the party has filed an affidavit of impecuniosity in the action before the court; or

(b) the court enters in the record the reason for not awarding fees under the provisions of Subsection (1).

*Id.*

■ To support damages under section 78–27–56, a trial court must determine that: (1) the claim or claims were "without merit," and (2) the party did not act in good faith. *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 965 (Utah App.1989). Whether a defense is without merit is a question of law that we review for correctness, *Jeschke v. Willis,* 811 P.2d 202, 203–04 (Utah App.1991), but the issue of bad faith is a question of fact to be ascertained by the finder of fact. *Broadwater v. Old Republic Sur.,* 854 P.2d 527, 534 n. 3 (Utah 1993).

■ In the case at bar, defendant refused to perform in a timely manner as required by the Stipulation, even after the Stipulation was declared binding on both parties by the trial court and summarily affirmed by the supreme court. This noncompliance forced Coalville to seek relief in 1986, 1989, and 1994 to force defendant to remove the signs. Also, defendant directly disobeyed the court's order not to remove the Chamber of Commerce sign for which defendant was found in contempt and ordered to pay costs. The trial court's findings recounted this history, noting there was "not a single instance after the 1986 order and the dismissal of the Appeal in which the Defendant has timely complied with the Stipulation which required removal of the signs on December 31, 1987,

1989, 1991 and 1993." The court further found that "legal action was required in each separate instance to enforce removal of the signs ordered to be removed in 1987, 1989 and 1993" to get defendant to comply with the Stipulation. These findings support the trial court's decision that "the claims and defenses asserted by the Defendant as a defense to his failure to remove the signs are without merit and are not asserted in good faith."

Although defendant ultimately prevailed on his claim that Coalville breached the nonmaterial provision to lease or purchase a sign, he did not prevail on his claim that the breach warranted rescission or his previously adjudicated yet recurring claim that the Stipulation was unenforceable. Defendant's measure of success on a collateral issue does not preclude an assessment of bad faith attorney fees, given his repeated failure to perform the material terms of the Stipulation that had consistently been upheld. *See Wean Water, Inc. v. Sta–Rite Indus., Inc.,* 141 Ariz. 315, 686 P.2d 1285, 1287 (Ct.App. 1984) (upholding attorney fees under similar bad faith statute where plaintiff's "technical 'success'" on breach of contract claim for $1,000 did not negate groundless fraud claim made in bad faith for which $14,110 in attorney fees were assessed); *cf. Topik v. Thurber,* 739 P.2d 1101, 1104 (Utah 1987) (upholding attorney fees pursuant to section 78–27–56 against defendant where "defense was partially in bad faith" because defendant testified falsely about one of several defenses).

Defendant's pattern of ignoring court orders upholding the Stipulation's validity cannot be condoned. Defendant's behavior required Coalville to take legal action on several occasions to force defendant's compliance while defendant maintained the same flawed defense. Defendant's actions warrant affirmance of the trial court's order of $16,843 in attorney fees for only those fees incurred in defending unmeritorious claims brought in bad faith. *See* note 1.

### III. Prejudgment Interest

■ Finally, Coalville argues in its cross-appeal that the trial court erred in awarding prejudgment interest to defendant on the

damages from Coalville's failure to lease or purchase a sign. The trial court's decision whether to award prejudgment interest presents a question of law, which we review for correctness. *Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 177 (Utah App.1993).

Prejudgment interest is appropriate

> "[W]here the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time ... and not from the date of judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy, such as in the case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damages must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed."

*Cornia v. Wilcox,* 898 P.2d 1379, 1387 (Utah 1995) (citations omitted) (alteration in original).

The Stipulation in the instant case provided, in pertinent part, as follows:

> Within thirty (30) days from the date hereof, Defendant agrees to provide plaintiff a written bid for providing a painted sign face for Coalville City at [defendant's] cost, the design of which shall be agreed upon between the parties. Within said thirty day period, Defendant shall also supply Coalville with all necessary cost information to enable Coalville to choose between leasing or purchasing the subject sign. *When Plaintiff determines to either lease or purchase the sign, Defendant agrees to provide and erect the sign face within sixty (60) days after notification by Defendant to proceed.*

(Emphasis added.)

██ The Stipulation stated that a specific time schedule would begin once Coalville de-

cided to either lease or purchase a sign. Coalville decided to purchase the sign on March 24, 1983, as reflected in the minutes of the city council. Coalville's 1983 decision to purchase a sign is consistent with the language of the Stipulation, which indicated that the sign would exist prior to February 1984, when it would be moved to Coalville's preferred site. The evidence at trial indicated that defendant was damaged in the amount of $3,890 for the cost of the sign structure that Coalville failed to purchase. This award of damages is consistent with the Stipulation, which provided that the cost of the sign would not exceed approximately $5,200. Accordingly, the Stipulation provides a sufficient basis for the accrual of prejudgment interest.[2]

## CONCLUSION

. Coalville's breach of the Stipulation was not material and was collateral to the main issue to be resolved, i.e., phasing out the signs. The damages awarded adequately compensated defendant for Coalville's breach. Additionally, the attorney fees awarded to Coalville pursuant to Utah Code Ann. § 78–27–56 (1996) were appropriate, as was the prejudgment interest awarded to defendant.

We therefore affirm the judgment of the trial court in all respects. The parties are to bear their own costs on appeal.

GREENWOOD and ORME, JJ., concur.

2. The trial court ordered prejudgment interest to accrue from January 1, 1985. Defendant does not appeal the date from which prejudgment interest was ordered to accrue.